# Tab 1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA SILFEE, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 2:14-CV-04908-TON |
| vs. ) ) ) | Senior Judge O'Neill |
| AUTOMATIC DATA PROCESSING, INC., ) ) ) | |
| Defendant. | |

## DECLARATION OF JENNIFER BERAN

I, Jennifer Beran, pursuant to 28 U.S.C. § 1746, depose and state as follows:

1.  My name is Jennifer Beran. I am over 18 years of age and competent to provide the following testimony.

2.  I am employed as the Director of Regulatory Compliance for First Data Corporation, parent of Money Network Financial, LLC ("Money Network").

3.  Money Network is a Delaware Limited Liability Company with offices in Cordova, Tennessee. Its TotalPay® Card Money Network Service is marketed by Automatic Data Processing ("ADP") to its clients pursuant to an agreement between Money Network and ADP.

4.  I have reviewed Money Network's records related to TotalPay Cards activated and used by Joshua Silfee, an employee of ERG Staffing Services LLC, whose payroll ADP processes.

5.  The records reflect that MetaBank issued to Silfee two VISA-branded TotalPay® Cards: (1) a card bearing account number xxxx-xxxx-xxxx-1931; and (2) a card bearing account number xxxx-xxxx-xxxx-7491.

6. The same records reflect that funds were first deposited onto Silfee's account bearing account number xxxx-xxxx-xxxx-1931 on March 5, 2010.

7. The same records reflect that funds were first deposited onto Silfee's account bearing account number xxxx-xxxx-xxxx-7491 on October 12, 2012.

8. In 2010 and 2012, TotalPay Card cardholders received, before activating their cards, enrollment materials from Money Network that included, among other things, the card, card-activation instructions, and the Terms and Conditions of Your TotalPay® Card Money Network Services ("Terms").

9. A copy of the Terms that Silfee received was retained in the ordinary course of business and is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 20, 2014 in Memphis, Tennessee.

*[signature]*
Jennifer Beran

# Exhibit A to Tab 1

**TERMS AND CONDITIONS
OF YOUR TOTALPAY® CARD MONEY NETWORK SERVICES**

This document, together with all other documents we provide to you pertaining to the TotalPay® Card and all associated products, including without limitation your TotalPay Card ("Card") and the Money Network branded-checks ("Money Network Checks"), constitutes a contract ("Agreement") which sets forth the agreed terms of the TotalPay Card Money Network Services and all associated products (collectively, the "Service") and its uses, and the responsibilities and liabilities of both Bank (as defined below) and you, the "Payee."

As used in this Agreement, the words "we," "our," and "us" mean MetaBank, d/b/a Meta Payment Systems, a federally insured depository institution located in Sioux Falls, South Dakota, its successors or assignees ("Bank"), and all associated affiliates, service providers, agents and associations of Bank required to fulfill the terms and manage the Service. The words "you" and "your" refer to you, the Payee, as holder of the Card and/or Money Network Checks. "Employer" means the employer or other person who enrolled you for the Service. "Trustee" refers to First Data Trust Company, the trustee named on the account established for the benefit of you and other participants in the Service at Bank pursuant to irrevocable trust agreements, and into which your salary or other compensation payments are deposited by your Employer (the "Pooled Account"). Your "Money Network Balance" is the amount available to be disbursed to you from the Pooled Account through your use of the Service. "Program Manager" refers to Money Network Financial LLC, the associated service provider that acts as the Service management company and administers the Service operations. "Service Fee Schedule" refers to the schedule of fees located on your card carrier, which apply to your use of the Service. "Card Carrier" means the materials which accompanied the Card (i.e., and on which the Card was attached upon your receipt).

**1. ACCEPTANCE OF AGREEMENT.**

By accepting, retaining, activating or using the Service:
- You agree to this Agreement and all other documents we provide to you, including but not limited to the Service Fee Schedule.
- You understand and agree that use of the Card is optional, however, if you chose not to retain and use the Card, you will need to retain the digits on your Card in order to access information about your Money Network Balance and to perform transactions (such as, using the Money Network Checks and/or electronic funds transfers to receive your salary or other compensation payments), as outlined below.
- You affirm that the personal identification information and documentation that you provided to your Employer, which constitutes part of this Agreement, is true and complete, and you authorize your Employer to provide us such information, and you authorize us, directly or through third parties, to make inquiries we consider necessary to validate such information, including checking third party databases.
- You acknowledge that this Agreement contains a provision requiring binding arbitration for the resolution of disputes.
- You acknowledge receipt of our Privacy Policy.
- Your consent to receive disclosures in electronic form in connection with the Service and your Money Network Balance.

**2. BINDING AGREEMENT; NON-INTEREST BEARING; AUTOMATIC ROLLOVER**

**This Agreement is a binding legal obligation.** Your Money Network Balance is maintained in the Pooled Account and insured by the Federal Deposit Insurance Corporation ("FDIC") up to the limits permitted by law. Pursuant to an agreement with the Trustee, your Employer disclaims any rights to any interest in any of the funds in the Pooled Account, and acknowledges and agrees that the funds in the Pooled Account do not constitute property of Employer, but instead constitute property of the employees on whose behalf the funds are held. You will not earn interest on your Money Network Balance. You authorize disbursement of funds from your Money Network Balance for the transactions, fees and charges under this Agreement. You acknowledge and agree that your Money Network Balance will automatically rollover to a general purpose stored value account at Bank under certain circumstances as further described in Section 21 of this Agreement, including if you cease to receive salary or other compensation payments from your Employer.

1

**3. USE OF MONEY NETWORK CHECKS.**

An initial stock of Money Network Checks is provided when you activate the Money Network Service. You may choose to receive your pay each or any pay period by completing a Money Network Check, rather than through any use of the Card, by using the Interactive Voice Response Unit (IVRU) at 1-866-402-1237. The IVRU process requires you to enter the digits on your Card in order to access your funds with a Money Network Check. You acknowledge that if you chose not to retain and use the Card, you will need to retain the digits on your Card in order to use the Money Network Check. The pre-authorized amount plus any applicable fees will be debited against your Money Network Balance immediately. The first Money Network Check that you use during each payroll payment period is free. Please note that once you receive a transaction and/or authorization number, the Money Network Check is valid for the amount authorized. To learn how to cancel a Money Network Check after it has been authorized and receive credit to your Money Network Balance, please refer to the Money Network Check Instructions that accompanied your Card. To order additional Money Network Checks, please contact Customer Service at 1-866-402-1237.

**4. FEES.**

You authorize us to deduct the fees, as set forth in the Service Fee Schedule provided on your Card Carrier or the General Purpose Stored Value Account Fee Schedule provided in Section 21, as applicable, directly from your Money Network Balance as accrued. We reserve the right to, from time to time, revise the Service Fee Schedule and/or the General Purpose Stored Value Account Fee Schedule, and will notify you accordingly. You acknowledge that by maintaining a Money Network Balance and/or continuing to use the Card and/or Service, you agree to any such revisions to the fees. You will pay any additional reasonable charges for services you request which are not covered by this document.

**5. OWNERSHIP AND USE OF THE CARD AND MONEY NETWORK CHECKS; RESPONSIBILITY.**

Your Card and the Money Network Checks are and will remain our property. However, you will be solely and completely responsible for the possession, use and control of your Card and the Money Network Checks that have been provided to you. You agree to safeguard your Card number and PIN and to keep any record of the PIN separate from your Card number. If you forget your PIN, you may obtain access to the PIN by calling Customer Service at 1-866-402-1237 and speaking to a customer service agent. You must surrender or destroy the Card and/or any Money Network Checks immediately upon our request. You agree that you will not use your Card or Money Network Checks for fraudulent or other illegal purposes.

You agree that you are financially responsible for all uses of your Card and the Money Network Checks provided to you and for the disbursement requests or other information provided to us, our representatives, agents or employees, by you or others permitted to use either your passwords or other personal identifying names or other information, whether by Web site data entry, ATM use, or otherwise. You also agree to be individually liable for any shortage resulting from charges or overdrafts, whether caused by you or another with access to your Card or Money Network Checks or that you permit to use either your passwords or other personal identifying names or other information. This liability is due immediately, and can be deducted directly from your Money Network Balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you authorized the item or benefited from the charge or overdraft. This includes liability for our costs to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

**6. APPLICABLE LAW.**

This Agreement is governed by the law of the State of South Dakota except to the extent governed by federal law, irrespective of the choice-of-law provisions of any state. Nevertheless, if we are served garnishments, summons, subpoenas, orders or legal processes of any type, we are entitled to rely on the representations therein and may comply with them in our own discretion without regard to jurisdiction.

2

**7. CHANGE IN YOUR ADDRESS.**
You must tell us in writing when you change your address. Please write to us at the Customer Service address provided at the end of this Agreement. You agree that any communication sent to you at your last address on record with us will be deemed to have been received by you.

**8. MANDATORY ARBITRATION PROVISION AND WAIVER OF TRIAL BY JURY.**
(a) You should read this Mandatory Arbitration Provision and Waiver of Trial by Jury ("Arbitration Provision") carefully. It provides that you waive your right to a trial by a court or a jury as well as a certain other rights in any dispute related to the Service (including, without limitation, your Card and the Money Network Checks) or the Agreement.

(b) In this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Card or this Agreement including the validity, enforceability or scope of this Arbitration Provision or the Agreement. "Claim" includes claims of every kind and nature, including but not limited to: initial claims, counterclaims, cross-claims and third-party claims; claims brought under contract, tort, statutory, regulatory or any other legal theory; and claims seeking any type of relief (including money damages, injunctive or declaratory relief). The terms "we" and "us", as used in this Arbitration Provision, shall mean the Bank and its subsidiaries, affiliates, licensors, predecessors, successors, and assigns; Program Manager; and Trustee, and all of their respective agents, employees, directors and representatives, and all third party contractors, marketers, merchants and services.

(c) Any Claim brought by you or by us shall be resolved, upon the election of either you or us, by mandatory binding arbitration pursuant to this Arbitration Provision and the procedures of the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to arbitrate. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within thirty (30) days after you receive notice of our decision to select the other organization to serve as arbitrator administrator. You may contact us for instructions on how to obtain copies of these organizations' procedures.

(d) **YOU AND WE HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO LITIGATE ANY CLAIM IN COURT OR HAVE A JURY TRIAL ON ANY CLAIM, OR TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE PROCEDURES OF THE NAF OR AAA, AS APPLICABLE (THE "PROCEDURES") EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN FOR A SMALL CLAIM. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION EXCEPT AS SET FORTH BELOW. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.**

(e) We will not elect arbitration of any Claim that is properly filed and pursued by a single arbitrator. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make award is limited to you and us alone. Furthermore, Claims brought by you against us or by us against you may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless otherwise agreed to in writing by all parties.

(f) Any Claim resolved by arbitration shall be arbitrated on an individual basis by a single arbitrator. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make award is limited to you and us alone. Furthermore, Claims brought by you against us or by us against you may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless otherwise agreed to in writing by all parties.

(g) Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. We will pay all filing and administration fees charged by the Administrator and arbitrator fees up to $1,000, and we will consider your request to pay any additional arbitration costs. If an arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the Administrator or for which we are responsible. If you receive an award from the arbitrator, we will reimburse you for the fees paid by you to the Administrator. Each party shall bear its own attorney's, expert's and witness fees, which shall not be considered costs of arbitration; however, if a statute gives you the right to recover these fees, or fees paid to the Administrator, then these statutory rights will apply in arbitration.

(h) This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA"). The arbitration shall be governed by the applicable Procedures, except that this Arbitration Provision shall control if it is inconsistent with the applicable Procedures. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except as provided by the FAA.

(i) Continuation. This Arbitration Provision shall survive termination of your participation in the Service (including, without limitation, your Card and the Money Network Checks) and termination of the Agreement. If any portion of this Arbitration Provision is deemed invalid or unenforceable it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement, except that if paragraph (f) is found to be invalid then the entire Arbitration Provision shall be deemed invalid.

**9. PERIOD BY WHICH DISPUTE MUST BE BROUGHT.**
You agree that any arbitration or court action involving your Money Network Service or your Money Network Balance must be brought within one year of the date the cause of action arose.

**10. LIMITATION OF LIABILITY.**
IN NO EVENT (EXCEPT AS SPECIFICALLY REQUIRED BY LAW) SHALL BANK, PROGRAM MANAGER OR TRUSTEE, OR ANY OF THEIR RESPECTIVE AFFILIATES, AGENTS OR SERVICE PROVIDERS, BE LIABLE FOR: (A) DAMAGES ARISING FROM OR RELATING TO THE SERVICE (INCLUDING, WITHOUT LIMITATION, YOUR CARD OR THE MONEY NETWORK CHECKS) OR THIS AGREEMENT, BEYOND THE SUM OF ONE HUNDRED DOLLARS ($100) (IN ADDITION TO REMITTING TO YOU YOUR MONEY NETWORK BALANCE, IF ANY); OR (B) ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. THESE CONDITIONS CANNOT BE CHANGED OR SUPPLEMENTED EXCEPT BY A WRITING SIGNED BY US. WE ARE NOT AFFILIATED WITH OR RESPONSIBLE FOR THE ACTIONS OR OMISSIONS OF YOUR EMPLOYER. ANY DISPUTES THAT ARISE BETWEEN YOU AND YOUR EMPLOYER ARE NOT OUR RESPONSIBILITY.

**11. CLAIMS AGAINST MERCHANTS.**
We are not responsible for goods or services you purchase or lease by using a Card for a POS/PIN transaction or otherwise by use of the Service. We are not subject to any claims or defenses you may have against a merchant in connection with any POS/PIN transaction or the underlying merchant transaction.

**12. WEB SITE AND ACTIVITY.**
Although considerable effort is expended to make our Web Site and other operational and communications channels available around the clock, we do not warrant these channels to be available and error free every minute of the day. You agree that we will not be responsible for temporary interruptions in service due to maintenance, Web Site changes, or failures, nor shall we be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer systems, forces of nature, labor disputes and armed conflicts. You agree to act responsibly with regard to the Web Site and its use. You will not violate any laws, interfere or disrupt computer networks, impersonate another person or entity, violate the rights of any third party, stalk, threaten or harass anyone, gain any unauthorized entry, or interfere with the Web Site's systems and integrity. We shall not bear any liability whatsoever for any damage or interruptions caused by any "computer viruses" that may affect your computer or other equipment. We advise the regular use of a reputable and readily available virus screening and prevention software.

**13. LINKS.**
Our Web Site may contain links to other web sites, provided as a convenience to you and not as an endorsement by us. We are not responsible for the content of any such Web Site, which you enter at your own risk.

**14. YOUR MONEY NETWORK BALANCE**
(a) Your Money Network Balance depends on the amount of salary and other compensation payments that have been deposited by your Employer into the Pooled Account, and the disbursement of any such payments in accordance with this Agreement, including through use of your Card, Money Network Checks, payment of applicable fees or as otherwise permitted by this Agreement. Your Employer will report the deposit of funds by your Employer to the appropriate governmental agencies and you will receive the appropriate notification, for the purposes of tax reporting, from your Employer. We bear no responsibility, whatsoever, for any such reporting or tax liabilities. You may not deposit or arrange for additional deposits (whether by electronic transfer, cash or paper check) unless we agree to provide that service by allowing you to designate additional funds and/or funding methods. If you request a Money Network Check from your Money Network Balance and do not redeem it, the Money Network Check may be returned to us and the funds, less any applicable fees, will be reapplied to your Money Network Balance.

(b) You may access information about your Money Network Balance from our IVR (the toll-free phone number is provided on the back of your Card) or on our Web Site without a charge. There are additional ways to access information about your Money Network Balance, such as ATM or live customer service, subject to a fee, as provided in the Money Network Service Fee Schedule.

**15. ERRORS OR OVERPAYMENTS.**
Your Employer may retain the right to deduct funds from your Money Network Balance in order to correct a previous error or overpayment to you, and you authorize us and the Trustee to (a) share information as necessary with your Employer in connection with resolving any errors or overpayments; and (b) accept instructions from your Employer to add or deduct funds from your Money Network Balance, and in the case of a deduction to return those funds to your Employer.

**16. OUR RIGHT TO OFFSET.**
We have the right to offset against your Money Network Balance any indebtedness owed by you to us, whether individually or jointly owed. We may offset against your Money Network Balance either before or after your death without demand or notice to you. We will not be liable for any dishonored transaction entry that results.

**17. DISBURSEMENTS.**
You may request a disbursement of funds from your Money Network Balance by using your Card and PIN at a participating ATM or POS terminal, by requesting a transaction and/or authorization number for a Money Network Check (as further described in Section 3), or as otherwise permitted by this Agreement. We may refuse any disbursement or transfer request which you attempt on forms not approved by us by any method we do not specifically permit, which is greater in number than the frequency permitted, or which is for an amount greater or less than any disbursement limitations. Even if we honor a nonconforming request, we may treat continued abuse of the stated limitations (if any) as your act of closing your Money Network products. We will use the date the transaction is completed by us (as opposed to the date you requested it) to apply to any frequency or amount limitations. The fact that we may honor disbursement requests that overdraw your available Money Network Balance does not obligate us to do so later. See the funds availability policy disclosure for information about when you can obtain disbursements of funds from your Money Network Balance.

**18. REFUNDS.**
If you are entitled to a refund for any reason for goods or services obtained with the Card or the Service, you agree to accept credits to your Money Network Balance in place of cash.

**19. AMENDMENTS.**
We may amend this Agreement by delivering notice of the amendment to you in the manner agreed to by you and us or to your last address as shown on our records. Unless necessary to protect system security, you will be given at least 21 days notice prior to the effective date of any amendment which results in an increased fee or charge, an increase in your liability, a reduction in our services, or stricter limitations on transactions or your ability to obtain funds from your Money Network Balance. By maintaining a Money Network Balance and/or continued use of the Card and/or Service, you agree to any such changes or amendments.

**20. TERMINATION.**
We may, at any time, for any or no reason, terminate this Agreement and/or temporarily or permanently suspend your right to use your Card or otherwise participate in the Service. You agree to destroy your Card, any Money Network Checks and any other applicable Service material if this Agreement is terminated. We will cause your Money Network Balance to be remitted to you, which we may do by crediting (or instructing the Trustee to credit) the debit or credit card account you may have designated or by remitting (or instructing the Trustee to remit) a paper check to the name and address last provided by you. You also may terminate your Card at any time, including upon receipt, if you do not wish to use the Card, as instructed on the Card Carrier (i.e., by destroying it by cutting it in half) or thereafter by accessing our Web Site at www.moneynetwork.com or by calling 1-866-402-1237. In any event, a cancellation fee may be charged. The termination of your Card will not discontinue your participation in this program for receipt of salary and other compensation payments from your Employer, or your ability to access those funds by Money Network Check, unless we receive written notification from your Employer that you have made alternative arrangements for the delivery of your salary and other compensation in a manner satisfactory to your Employer. The following sections shall survive and remain in effect in accordance with their terms upon termination of this Agreement: Sections 6 through 13, Section 22, Section 23 and Section 24.

**21. ADDITIONAL PROVISIONS RELATING TO GENERAL PURPOSE STORED VALUE ACCOUNTS; AUTOMATIC ROLLOVER.**
(a) **In the event your Employer notifies us that your employment has terminated (or instructs us to make any deposit on your behalf for 30 days, we will roll over your Money Network Balance to a general purpose stored value account in your name by directing the Trustee to transfer your Money Network Balance from the Pooled Account to a general account with Bank. Your funds in such general account will be commingled with funds of other individuals. The Money Network Balance of your general purpose stored value account will be insured by the Federal Deposit Insurance Corporation up to the limits permitted by law. You will not receive any interest on the Money Network Balance of your general purpose stored value account. If your money is transferred to a general purpose stored value account due to lack of deposit activity, but your employment has not been terminated, please call 1-866-402-1237 and you will be given an opportunity to reverse the transfer and be credited for any additional fees incurred as a result of the roll over.**

(b) **Important Disclosures.** In connection with such conversion, you will not receive a new Card and you will no longer be able to use the Money Network Checks to access your Money Network Balance. You may, however, continue to use your Card (if you had elected to retain and use such Card), as a general purpose prepaid card. The Card will no longer be tied to your Employer's payroll distribution program. The general purpose prepaid card is NOT a credit card and is not connected in any way to any other account.

You may obtain information about your Money Network Balance at any time from our IVR or Web Site at no charge as provided in Section 16(b) above. You may use your Money Network Checks to obtain the full amount of Money Network Balance at any time prior to your account rolling over. Following the roll over, you may contact Customer Service at 1-866-402-1237 to obtain a check for the full amount of your Money Network Balance or to obtain information about upgrading your Money Network Services.

(c) If you have no activity on your Card and a balance of zero in your general purpose stored value account for a period of 30 days or more, your Card and the Money Network Services shall be terminated.

(d) The balance remaining in your general purpose stored value account may become unclaimed funds escheatable to the state, if, as shown by our records, you have not, within the statutory period, requested refund of your amount on deposit, corresponded with us concerning your Card, or transacted any business with your Card. If that occurs, the funds will escheat to the state in which your last known address was located, according to our records.

(e) **Fees for General Purpose Stored Value Account.** Upon rolling over to a general purpose stored value account, as provided in this Section 21, the Service Fee Schedule will no longer apply. Instead, the fees set forth in the General Purpose Stored Value Account Fee Schedule (below) will apply. Other than the new monthly account maintenance fee of $2.95, categories and types of fees as you were charged under the Service Fee Schedule, however, some fees may be higher and some fees may be lower than what you were paying under the Service Fee Schedule. The following fee schedule shall apply to your general purpose stored value account established as provided in this Section 21:

| General Purpose Stored Value Account Fee Schedule | |
|---|---|
| Categories & Types of Fees | Fees (on a per item basis, unless otherwise) |
| **New Fee** | |
| Monthly Account Maintenance | $2.95/per month |
| **Existing Fees** | |
| ATM Withdrawals | $1.50 |
| International ATM Withdrawals | $2.50 |
| Inquiries VRU Phone | $0.25 |
| PIN-based POS Transactions | $0.00 |
| Signature Debit Transactions | $0.00 |
| Signature Debit Counter Bank Withdrawal (Cash Advance) | $5.00 |
| ATM Declined Transaction | $0.00 |
| ATM Balance Inquiries | $1.50 |
| ACH Account Transfers (outgoing) | $0.00 |
| Purchase of a Money Network Check | $0.00 |
| Monthly Statement (via Internet) | $0.00 |
| Duplicate Paper Monthly Statement (via mail) | $2.95 |
| Stop Payment Request for ACH debit | $10.00 |
| Stop Payment Request for Money Network Check | $10.00 |
| Insufficient Funds | $10.00 |
| Lost Stolen Replacement card via mail (additional charge for overnight delivery) | $9.95 |
| Operator Assisted Inquiries | $1.00 |
| Balance and Deposit Inquiries | $1.00 |
| Account Research | $10.00/per hour |
| Purchase of a Money Network Check | $1.00 |
| Cancellation of a Money Network Check | $1.00 |
| Verification of a Money Network Check | $1.00 |
| **Transaction Limits** | |
| ATM Daily Withdrawal Limit | $400.00/per day |
| POS Daily Transaction Limit | $600.00/per day |
| Money Network Check Limit | $9,999.00/per Money Network Check |

(f) Except as otherwise provided in this Section 21, all terms and conditions in this Agreement shall continue to apply to the general purpose prepaid card which shall be included within the definition of Card and as part of the Service

**22. SEVERABILITY AND WAIVER; INTERPRETATION.**
The invalidity of any provision of this Agreement shall not affect the validity of other provisions. Any waiver of any term or condition of this Agreement shall not operate or be construed as a continuing waiver of such term or condition. No delay or failure of any party in exercising any right under this Agreement are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this Agreement should be construed so the singular includes the plural and the plural includes the singular.

**23. ASSIGNMENT.**
You may not assign, convey, subcontract, sell or transfer any of your rights or obligations with regard to the Service. We may assign this Agreement and any of our rights and obligations at any time, subject to any notice required by law. Any of our obligations under this Agreement may be performed by third parties on our behalf.

**24. PRIVACY, CONFIDENTIALITY, DATA SECURITY.**
(i) **Information We Collect**. We may collect the following information ("Customer Information"):
(a) information you provide to us, such as when you apply for a Card or seek a replacement Card such as your name, address, email address and birthdate;
(b) information about transactions made with the Card, such as date and amount of transaction, card balance and card activity;
(c) information you provide to us when you contact us with customer service issues or inquiries; and
(d) information we receive as a result of verifying customer information.

(ii) **Information We Disclose**: We may disclose Customer Information about current and former payees, except for payees with a mailing address in California, to nonaffiliated third parties that perform marketing or other services on our behalf or other financial institutions with whom we have joint marketing agreements. We also may disclose your Customer Information to nonaffiliated third parties as otherwise permitted by law, such as:

- where necessary to complete transactions and provide customer services;
- to verify the existence and condition of your Card for a third party, such as a merchant or credit bureau;
- to comply with government agency, court order, or other applicable law or legal reporting requirements;
- to our employees, auditors, service providers or attorneys, as needed; and
- to help protect against fraud.

By activating the Service, you agree to our collection and sharing of Customer Information as provided herein. Furthermore, unless your mailing address is in California or Vermont, by activating the Service you also agree to our disclosure of all Customer Information to Money Network Financial, LLC for its own uses and disclosure, which may include use or disclosure to market or provide additional products and/or services that it believes may be of interest to you.

(iii) **Information Security**: Subject to the exceptions set forth above, we restrict access to Customer Information to persons who need Customer Information to perform their job responsibilities. In addition, we maintain physical, electronic and procedural security measures that comply with federal regulations to safeguard Customer Information.

**ELECTRONIC FUND TRANSFERS DISCLOSURES**
Your Rights and Responsibilities; Liability for Unauthorized Transfers. Please read this disclosure carefully because it tells you your rights and obligations for the transactions listed. You should keep this notice for future reference. The term fee schedule, as used in this Disclosure section refers to your Service Fee Schedule unless your Money Network Balance has rolled over to a general purpose stored value account, in which case it refers to the General Purpose Stored Value Account Fee Schedule.

A. **Loss or Theft** - Tell us AT ONCE if you believe your Card, or any other Service materials, and/or personal identification number ("PIN") or account access code ("Code") has been lost or stolen. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Money Network Balance. If you believe your Card, or money in your Money Network Balance and/or PIN or Code has been lost or stolen or that someone has transferred or may transfer money from your Card without your permission, call: 1-866-402-1237 or write: CUSTOMER SERVICE, 7000 GOODLETT FARMS PARKWAY, SECOND FLOOR, CORDOVA, TENNESSEE 38016.

B. **Consumer Liability** - If you believe your Card, PIN or Code has been lost or stolen, or that you have lost information that would enable someone to authorize a Money Network Check without your permission, and you tell us within two (2) business days after you learn of the loss or theft, you can lose no more than $50 if someone used your Card, PIN or Code or authorized a Money Network Check without your permission. If you do NOT tell us within two (2) business days after you learn of the loss of your Card or information, and we can prove we could have stopped someone from using your Card, PIN or Code or authorizing a Money Network Check without your permission if you had told us, you could lose as much as $500.

C. **Telling us in Time** - Also, if your account activity shows transfers that you did not make or authorize, tell us at once. If you do not tell us within 60 days after the account activity was made available to you, you may not get back any money you lost after the 60 days, if we can prove that we could have stopped someone from taking the money if you had told us in time.

D. **Delays** - If in good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

E. **Business Days** - For purposes of these disclosures, our business days are Monday through Friday. Holidays are not included.

**Types of Electronic Fund Transfers**. Indicated below are types of Electronic Fund Transfers we are capable of handling, some of which may not apply to the Service in which you are enrolled.

A. **International Transactions** – Signature debit transactions are not permitted at merchant locations outside the U.S. When using your Card at a merchant location outside the U.S., you must enter your PIN. The merchant, network or card association that processes the transaction may convert your related debit or credit into U.S. dollars in accordance with its then current policies. The conversion rate on the processing date may differ from the rate on the date of the transactions. This percentage amount is independent of any amount charged by us in accordance with the fee schedule.

B. **Electronic Funds Transfers Initiated By Third Parties** - You may authorize a third party to initiate electronic funds transfers between your Money Network Balance and the third party's account, provided, however, that only in the case of a general purpose stored value account may you arrange for payments to your Money Network Balance beyond salary and other compensation payments from the employer or other person who enrolled you for the Service. Transfers to make or receive payments may be one-time occurrences or may recur as directed by you. These transfers may use ACH or other payment networks. Your authorization to the third party to make these transfers can occur in a number of ways. In some cases, your authorization can occur when the merchant posts a sign informing you of its policy. In all cases, the transaction will require you to provide the third party with your Card number and bank information. You should only provide your bank and Money Network information (whether over the phone, the Internet, or via some other method) to trusted third parties whom you have authorized to initiate these electronic funds transfers. Examples of these transfers include, but are not limited to:

- Preauthorized credits. You may make arrangements for certain direct deposits to be made into your Money Network Balance. (Only in the case of a general purpose stored value account may you arrange for payments beyond salary and other compensation payments from the employer or person who enrolled you for the

- Preauthorized payments. You may make arrangements to pay certain recurring bills from your Money Network Balance.

C. **Telephone Transactions** - You may access your Money Network Balance by telephone 24 hours per day at 1-866-402-1237 by using your touch-tone phone, Card number, and Code to:
- Find out the current amount of your Money Network Balance.
- Initiate an ACH transfer to another financial institution.
- Purchase a Money Network Check.

D. **Additional Customer Service** - You may also reach a customer service representative by telephone to:
- Inquire about your Service activity, including payroll deposit verification.
- Purchase a Money Network Check.
- Obtain Money Network Check number/amount verification.
- Cancel a Money Network Check.

E. **ATM Transactions** - You may access your Money Network Balance by ATM using your Card and personal identification number to:
- Request cash disbursements from your Money Network Balance by initiating a "withdrawal" transaction.
- Find out the current amount of your Money Network Balance.

F. **Debit Card Transactions** - You may access your Money Network Balance to:
- Purchase goods.
- Pay for services.
- Get cash from a merchant, if the merchant permits, or from a participating financial institution.

Some of these services may not be available at all terminals.

G. **ATM and Debit Card Transactions** – limitations on frequency and dollar amounts. Certain limitations on the frequency and dollar amount of ATM and debit card transactions apply to your account. Please refer to the fee schedule for specific information.

H. **Split Transactions** – A "split-tender" transaction splits the transaction amount between your Card and another form of payment. Depending on the merchant's policy, you may be able to use your Card toward a portion of the final purchase price, and then use another form of payment to pay the balance of the final purchase price. This is called a "split tender" transaction. You must ask the merchant if they can accept two forms of payment for your purchase. If the merchant agrees, first re quest that the merchant place a specific dollar amount on the other form of payment (e.g., the final transaction amount less the balance of the funds available on your Card), and then use the Card to pay the remaining balance. Note that some merchants, particularly department stores, do not allow split tender transactions, or will only allow a split-tender transaction if the other form of payment is cash or check. Internet and mail order merchants do not allow split-tender transactions.

I. **Fee For Electronic Transactions** - Indicated below is certain information about fees associated with Electronic Fund Transfers which apply to the Service:
- We do not charge for direct deposits to your Money Network Balance.
- We charge a fee for outgoing ACH account transfers and certain other transactions and services.
- Please refer to the fee schedule for information on applicable charges.

**Confidentiality**. Please refer to Section 24 your agreement with us.

**Documentation**.
A. **Terminal transfers** - You can get a receipt at the time you make any transfer to or from your Money Network Balance using one of our automated teller machines or point-of-sale terminals.

B. **Preauthorized credits** - If you have arranged to have direct deposits made to your Money Network Balance at least once every 60 days from the same person or company, you can call us at 1-866-402-1237 to find out whether or not the deposit has been made.

C. **Account Activity** - You may obtain a 60-day history of your account activity, as well as the current amount of your Money Network Balance, by accessing our Web Site at www.moneynetwork.com. You may also obtain a written 60-day transaction history by calling 1-866-402-1237 or writing us at CUSTOMER SERVICE, 7000 GOODLETT FARMS PARKWAY, SECOND FLOOR, CORDOVA, TENNESSEE 38016.

D. **Periodic statements** - You may elect to get a monthly statement. The current fee for periodic statements is listed in the fee schedule.

E. **Disclosures** – At your request, we will provide you with an additional paper copy of these Terms and Conditions or Privacy Policy or any amendments, but you may be charged a fee for the additional copy.

**Preauthorized Payments.**
A. **Right to stop payment and procedure for doing so** - If you have told us in advance to make regular payments from your Money Network Balance, you can stop any of these payments. Here is how: Call or write us at the telephone number or address listed in this document in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. Please refer to the fee schedule for information on stop payment order charges.

B. **Notice of varying amounts** - If these regular payments may vary in amount, the person you are going to pay will tell you, 10 days before each payment, when it will be made and how much it will be. (You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

C. **Liability for failure to stop payment of preauthorized transfer** - If you order us to stop one of these payments 3 business days or more before the transfer is scheduled and according to our agreement with you, and we do not do so, we will be liable for your losses or damages proximately caused by our failure, as the law imposes in such cases.

**Our Liability**. If we do not complete a transfer to or from your Account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages, as the law imposes in such cases. However, there are some exceptions. We will not be liable, for instance:
- If, through no fault of ours, you do not have enough money in your Money Network Balance to make the transfer.
- If the automated teller machine where you are making the transfer does not have enough cash.
- If the terminal or system was not working properly and you knew about the break down when you started the transfer.
- If circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken.
- any failure on our part may be not intentional and resulted from a bona fide error, notwithstanding procedures to avoid such error, except for actual damages (which do not include indirect, incidental, special or consequential damages).
- There may be other exceptions stated in our agreement with you.

**ATM Fees**. When you use an ATM, you may be charged a fee by the ATM operator or any network used and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer.

**Error Resolution Notice**. In case of errors or questions about your electronic transfers, telephone or write us at the telephone number or address listed in this document, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after the date of the date you electronically accessed your account activity or the date we sent the FIRST statement on which the problem or error appeared.
- Tell us your name and Card number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Money Network Balance within business days for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your Money Network Balance. For errors involving new Money Network participants, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new Money Network participants, we may take up to 20 business days to credit your Money Network Balance for the amount you think is in error. We consider a new Money Network participant for the first 30 days after your Employer first uses the Service to disburse your salary or other compensation payments, unless you already have a prior established account with us.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation. If you need more information about our error resolution procedures, call 1-866-402-1237 or visit www.moneynetwork.com.

**FUNDS AVAILABILITY**
Electronic transfers to your Money Network Balance will be available for disbursement on the business day we receive the funds. Once the funds are available, you can request them in cash or as otherwise provided in the Agreement. If you cancel a Money Network Check in accordance with your Money Network Check Instructions provided with your Money Network Check, funds from your Money Network Balance within one business day after our receipt of your Money Network Check and other required information. For determining funds availability, every day is a business day, except Saturdays, Sundays, and federal holidays. If we receive required information before 5:00 p.m. on a business day that we are open, we will consider that the required information after 5:00 p.m. or on a day that we are not open, we will consider such required information to be received on the next business day we are open.

**CUSTOMER SERVICE**
**7000 GOODLETT FARMS PARKWAY, SECOND FLOOR**
**CORDOVA, TENNESSEE 38016**
**Phone: 1-866-402-1237**
**Business Days: 24 hours per day**
**Seven days per week**

© 2007 MetaBank. All Rights Reserved. The MONEY NETWORK trademark and logo are owned and registered by or licensed to Money Network Financial, LLC, an affiliated company of First Data Corporation. The ADP logo is a registered trademark of ADP of North America, Inc. and TOTALPAY is a registered service mark of ADP, Inc.

M-10547

# Tab 2

**Defendant files only the relevant excerpts of this exhibit.**

*See* Local Rule of Civil Procedure 5.1.2(6) ("If using electronic [filing], an ECF Filing User must submit as exhibits or attachments only those excerpts of the identified documents that are relevant to the matter under consideration by the court.")

EXECUTION COPY

## PAYCARD ALLIANCE AGREEMENT

This PAYCARD ALLIANCE AGREEMENT, together with all schedules, attachments and addenda hereto (this "Agreement"), dated as of June 5, 2006 (the "Effective Date"), is made by and between ADP, Inc., a Delaware corporation, with its principal offices at One ADP Boulevard, Roseland, New Jersey 07068 ("ADP") and Money Network Financial, LLC, a Delaware limited liability company, with offices at 7000 Goodlett Farms Parkway, Cordova, Tennessee 38016 ("Money Network").

### W I T N E S S E T H:

WHEREAS, Money Network is in the business of, among other things, providing paycard administration and processing services; and

WHEREAS, ADP is in the business of, among other things, providing services to clients which include, among other things, human resource administration, tax processing and tax filing, payroll and benefits administration and other related services; and

WHEREAS, Money Network and ADP desire to form an alliance to provide the Alliance Solution (as defined below); and

WHEREAS, each party intends to demonstrate a continued commitment and dedication to work together to promote the Alliance Solution, as provided in this Agreement; and

WHEREAS, the parties desire that Money Network provide paycard administration and processing services for the Alliance Solution, and, through a federally-insured depository institution designated by Money Network from time to time and reasonably acceptable to ADP ("Bank"), provide related card-issuance, card account, and card transaction services (collectively, "Bank Services").

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties hereto agree as follows:

1. DEFINITIONS.

As used in this Agreement and in addition to any other terms defined herein, the following defined terms shall have the following meanings:

"ACH" shall mean an automated clearinghouse.

"Active Card" shall mean an Alliance Paycard issued in connection with a Client Agreement that is loaded or re-loaded within the last (30) days.

"ADP Client Data" shall mean all information or data regarding ADP Clients that is provided to Money Network or any of its Affiliates in connection with this Agreement, whether provided by ADP, the ADP Client, the Recipient, a Cardholder or generated as a result of a Cardholder's use of an Alliance Paycard.

"ADP Clients" shall mean any Entity that purchases or has purchased, pursuant to a Client Agreement, ADP Products or otherwise utilizes services provided by ADP's Tax and Financial Services Division pursuant to a Client Agreement.

"ADP Legacy Client" shall mean any Entity to which ADP is providing its TotalPay Card and/or Instant Pay Card products up to and including the Transition Date.

EXCERPTED MATERIAL (See Local Rule of Civil Procedure 5.1.2(6))

EXECUTION COPY

"ADP Products" shall mean any and all payroll, tax-filing, payroll-related, human resource information systems, benefit administration (including COBRA, FSA and 401k), money movement or other information products or services that ADP or any of its Affiliates now or hereafter offers to clients or prospects.

"Affiliate" shall mean, with respect to ADP and Money Network, any Entity which, directly or indirectly, owns or controls, is owned or controlled by, or is under common ownership or common control with ADP or Money Network, as applicable. "Control" means owning, controlling or having power to vote 50.1% or more of the outstanding shares of voting stock or similar equity interests.

"Alliance Paycard" shall mean a VISA, MasterCard or other card association or network branded magnetic stripe plastic card that could be used to access an Alliance Paycard Account.

"Alliance Paycard Account" means a Paycard Account established under the Alliance Solution.

"Alliance Solution" shall mean a full service application of the Money Network Standard Solution as existing from time to time with such features, functionality and related services as set forth in this Agreement and as more fully described in Exhibit A.

"Benefits Cards" shall mean FSA, HSA, transportation reimbursement, medical reimbursement and similar health or medical related benefit stored value cards that do not have, as a primary purpose or promoted feature, the ability to be used for the receipt of net wages, salary or other payroll-based compensation.

"Cardholder" shall mean the holder of an Alliance Paycard.

"Cardholder Data" means any information provided by or relating to a Cardholder (including name, address, social security number, date of birth), resulting from a transaction using an Alliance Paycard, or otherwise obtained by Bank (whether directly, from ADP, or indirectly from Money Network) or resulting from Bank's performance of the Bank Services, including, the record of Alliance Paycard transactions corresponding to each Cardholder, the Cardholder Account, and any other related information or data specific to each Cardholder.

"Change of Control" shall mean: (i) the acquisition by any Entity (other than by First Data Corporation or its Affiliates) of 25% or more of the outstanding shares of voting stock or similar equity interests of Money Network or any of its Affiliates that are directly or indirectly involved in any material respect in the provision of the Alliance Solution; (ii) 50% or more of the members of the Board of Directors (or such other governing body) of Money Network or any of its Affiliates that are directly or indirectly involved in any material respect in the provision of the Alliance Solution on any date have been appointed by or on behalf of any Entity (other than by First Data Corporation or its Affiliates); or (iii) any subsidiary, material division, material operating assets or any other substantial portion of the assets, operations or business of Money Network or any of its Affiliates that are directly or indirectly involved in any material respect in the provision of the Alliance Solution is transferred (via sale, merger or otherwise) in a single transaction or series of related transactions to any Entity; provided, however, that no Change of Control shall be deemed to occur of any company if after the transaction First Data Corporation, directly or indirectly, continues to own, control or have power to vote 50.1% or more of the outstanding shares of voting stock or similar equity interests of such company and no Restricted Party, directly or indirectly, owns, controls or has power to vote 25% or more of the outstanding shares of voting stock or similar equity interests of such company.

"Client Agreement" shall mean the user agreement between ADP and an ADP Client relating to the use of any ADP Product, including the Alliance Solution, the terms and conditions of which shall govern such use.

"Money Network System" shall mean the processing systems, computer equipment, computer software and related equipment and other systems and processes used at any time and from time-to-time by Money Network to provide the Alliance Solution and associated services contemplated hereunder.

"Money Network Standard Solution" shall mean Money Network's stored-value card solution with such features and functionality as supplemented, enhanced or otherwise modified from time-to-time, and including the Bank Services.

"National Account ADP Client" shall mean any ADP Client with more than one thousand Recipients that is not a FACS ADP Client.

"NACHA" means National Automated Clearing House Association.

"Networks" means VISA, Star, Plus, Interlink and any other Automated Teller Machine ("ATM"), Point of Sale ("POS") or regional processors in which Bank is a member or participant from time to time during the Term.

"Network Rules" means self-imposed industry rules and compliance standards established by the Networks.

"Paycard" shall mean a card that accesses a Paycard Account.

"Pass Through Costs" shall mean costs to Money Network of providing the Alliance Solution, including to the extent of changes in the market and economy, changes in operating environment, changes in any of the Operating Rules, fees, or operation procedures of any transaction processing or card networks, interchanges or switches, or changes in Legal Requirements or the interpretation or implementation of Legal Requirements by any federal, state or local governmental authority.

"Paycard Account" means an account directly or indirectly established by a Recipient or an employer or other Payer on behalf of a Recipient to which electronic fund transfers of the Recipient's wages, salary, or other monetary benefits are made, whether the account is operated or managed by the employer, a third-party payroll processor, a depository institution or any other Payer.

"Payer" shall mean (i) any Payment Obligor or (ii) any other business arranging to pay or make payment available to Recipients on behalf of any Payment Obligor.

"Payer Based Paycard Program" shall mean a Paycard program conducted through an arrangement with: (1) a Payment Obligor obligated to pay the Recipients to whom cards are issued under the program; or (2) a business arranging, on behalf of a Payment Obligor, to pay or make payment available to the Recipients to whom cards are issued under the program.

"Purchase Cards" shall mean purchase cards issued to an employee or authorized representative by a commercial or governmental Entity to use to acquire and pay for goods and services on behalf of such Entity (including employee or authorized representative travel and expenses) and which do not have, as a primary purpose or promoted feature, the ability to be used for the receipt of net, wages, salary or other payroll-based compensation.

"Recipient" shall mean any individual natural person receiving wages, fees, compensation or other monetary benefits from an employer, contractor or other business or from any other third party from which such individual receives monetary benefits (such employer, contractor, business or third party being referred to herein as a "Payment Obligor").

"Referable Client" shall mean (i) any ADP Client or (ii) a Payer that demonstrates to Money Network an interest in Gross to Net services as part of its payroll solution.

**EXCERPTED MATERIAL (See Local Rule of Civil Procedure 5.1.2(6))**

**EXECUTION COPY**

        (i)    ADP Transition. ADP Clients shall not be transitioned to another Paycard solution other than as expressly permitted under this Agreement. ADP's liability to Money Network for a violation of this provision shall not be limited by Section 20.1, and all fees and revenue (including Cardholder fees and float-generated revenue) that would have been earned by Money Network with respect to the transitioned ADP Clients and their corresponding Cardholders had there not been a violation of this provision are direct damages of Money Network not excluded under Section 20.3 of this Agreement. Any threatened or actual transition of ADP Clients to another Paycard solution other than as permitted under this Agreement could result in immediate, irreparable harm to Money Network, for which monetary relief may not provide a complete remedy, and for which equitable remedies, including an injunction or specific performance, may be awarded by a court of competent jurisdiction.

4.    MARKETING AND ALLIANCE TERMS.

    4.1    Program Transition and Exclusivity.

        (a)    ADP Clients. ADP agrees to use commercially reasonable efforts to cause all Paycards marketed by ADP and its Affiliates in the United States to ADP Clients and their respective Recipients (other than ADP Legacy Clients) on or after the applicable Transition Date to be Alliance Paycards.

        (b)    ADP Exclusivity. Subject to the provisions of Section 4.1(c), during the Term, neither ADP nor any of its Affiliates will (i) promote, offer or provide a Payer Based Paycard Program to Payers in the United States for Payees in the United States other than the Alliance Solution; (ii) engage any third party to promote, offer or provide a Payer Based Paycard Program to Payers in the United States for Payees in the United States other than the Alliance Solution; or (iii) license or allow others to license the ADP Branded Material in relation to or for promoting, offering or providing a Paycard or a Payer Based Paycard Program in the United States other than Alliance Paycards and the Alliance Solution. For the avoidance of doubt, the foregoing obligation and Section 4.1(a) shall not apply to (A) Benefits Cards, (B) Purchase Cards or (C) any checking, savings or other bank accounts offered to ADP Clients' Recipients, whether or not such accounts can be accessed by a debit card, so long as such debit or other card is not marketed or offered as a payroll card or as an alternative to a payroll card.

        (c)    Inapplicability of ADP Exclusivity. Notwithstanding the foregoing, nothing herein shall prohibit ADP or any of its Affiliates from doing any of the following, which shall not be subject to the exclusivity requirements set forth in Section 4.1(a) or Section 4.1(b):

            (i)    maintaining a Payer Based Paycard Program for ADP Legacy Clients that have not been converted to the Alliance Solution and issuing Paycards to ADP Legacy Clients thereunder;

            (ii)    maintaining any Payer Based Paycard Program for any ADP Client for which each of the following have occurred, so long as ADP does not solicit such ADP Client to convert to a Payer Based Paycard Program other than the Alliance Solution:

                (A)    Money Network is provided written notice of a claim that such ADP Client has either experienced (1) a compromise of its ADP Client Data or Cardholder Data held by Money Network or any of its Affiliates; or (2) dissatisfaction with Money Network's (or any of its Affiliates) failure to perform the Alliance Solution in accordance with the service levels set forth on Schedule 2.1(b) (with respect to that ADP Client); and

the members of its sales team and any other Money Network representatives that engages a Payer that expresses an interest in a Payer Based Paycard Program to inquire as to (1) whether or not such Entity is an ADP Client and (2) whether or not such Entity is actively in the market for Gross-to-Net services as part of its payroll solution. ADP will offer to provide each Referable Client with the Alliance Solution pursuant to a Client Agreement, subject to ADP's standard client evaluation and acceptance procedures, and such Referable Client will be treated as an ADP Client for purposes hereof. Any Referable Client that elects to utilize the Alliance Solution will receive the Alliance Solution in accordance with the terms hereof, including Section 7 (Economic Terms). ADP agrees to give Money Network the opportunity to participate in the offering and sale of the Alliance Solution to any Referable Client. In addition, and without limiting the applicability of Section 7 to Referable Clients, ADP shall pay to Money Network a one-time fee for each implemented Alliance Solution ADP Client equal to the product of $1 and the total number of Active Cards outstanding six months following the first Cardholder implementation for such ADP Client (the "Referral Fee"). ADP shall pay the Referral Fee to Money Network within six weeks of its determination. For the avoidance of doubt, if a Payer or other business to which Money Network offers or provides any product or service is not a Referable Client, then Money Network will have no obligations hereunder with respect to the offering or provision of products or services to such businesses, including the Money Network Stand-Alone Solution.

(i) Sales Conflict. The parties acknowledge and agree that their respective sales forces may encounter and compete against each other in the Paycard market with respect to sales to non-Referable Clients. In the event that this occurs, the parties agree to meet as needed to discuss any sales conflicts encountered by the parties' respective sales forces and to use good faith efforts to resolve such conflicts.

4.2     Marketing; Related Rights and System Integration.

(a) General. The parties agree to devote reasonable marketing resources to the development and implementation of a program (including the creation of associated material) for advertising and marketing the Alliance Solution.

(b) Authorization. Money Network shall provide ADP personnel with access to certain portions of the Money Network System via a Web browser over the Internet or other direct connection solely for ADP's own use in connection with supporting, marketing and displaying the Alliance Solution to ADP Clients and prospective clients in accordance with this Agreement and fulfilling ADP's other obligations under this Agreement. ADP shall ensure that only qualified and trained personnel access, display, market and support the Alliance Solution.

(c) Marketing Rights. ADP shall have the right to access and display the Alliance Solution, in accordance with Section 4.2(b), as necessary for ADP to promote, sell, demonstrate, advertise, showcase, publicize, and otherwise generate market interest in the Alliance Solution in any manner permitted under this Agreement.

(d) Documentation Rights. ADP shall have the right to copy and display, at ADP's cost, any Alliance Solution documentation or training materials provided to ADP by Money Network, on any media, in connection with ADP's internal use, marketing or support of the Alliance Solution as permitted by the terms of this Agreement.

(e) Passwords. ADP shall have the right to use user names and passwords to access the Money Network System solely as set forth in this Section, and Money Network agrees to issue such user names and passwords to ADP personnel designated by the ADP operating sponsor (pursuant to Section 17.1) as reasonably required by ADP to exercise the rights and to fulfill its obligations under this Agreement. Money Network reserves the right to temporarily or permanently terminate any person's access to the Money Network