IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA SILFEE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) No. 2:14-CV-04908-TON ) ) Senior Judge O'Neill |
| vs. | ) ) |
| AUTOMATIC DATA PROCESSING, INC., | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

Plaintiff Joshua Silfee ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby respectfully submits the within Response in Opposition to Defendant's Motion to Dismiss Or, in the Alternative, Compel Individual Arbitration And Stay Proceedings, stating in support thereof as follows:

**I.    INTRODUCTION**

Plaintiff's claim arises under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq*. Plaintiff was employed by ERG Staffing Service, LLC ("ERG") until approximately July of 2013. During this time ERG contracted with Automatic Data Processing, Inc. ("Defendant") for the provision of various payroll services, including the use of the TotalPay Card. Pursuant to this relationship, along with the relationship between ERG and Plaintiff, Defendant was required by law to pay Plaintiff and the members of the class their full wages earned.

1

Defendant paid Plaintiff his wages through the TotalPay Card. However, Defendant did not pay Plaintiff his full wages because Defendant deducted certain fees from Plaintiff's pay before he was granted access to his rightfully earned wages. These deductions were not taken with Plaintiff's written authorization and were not approved by the Department of Labor and Industry ("Department"). As a result, Defendant failed to pay Plaintiff and the members of the class their full wages as required by statute.

On August 22, 2014, Plaintiff filed the present action on behalf of himself and all others similarly situated. Defendant has moved to dismiss the present action on the grounds that the deduction was legal and that Defendant is not an "employer" for purposes of the WPCL. In the alternative, Defendant has moved to compel arbitration pursuant to an arbitration clause in Section 8 ("Arbitration Clause") of the TERMS AND CONDITIONS OF YOUR TOTALPAY CARD MONEY NETWORK SERVICES ("Terms and Conditions Agreement").

Defendant's motion to dismiss should be denied because the deduction at issue was not authorized in writing and was not approved by the Department as required by statute. It also should be denied because Defendant is an "employer" for WPCL purposes; Defendant was an agent of ERG, was given decision-making authority regarding wages in this agency capacity and exercised its agency authority to deduct the wages of Plaintiff and the members of the Class.

Defendant's motion to compel individual arbitration should be denied because there is simply no agreement between the parties to arbitrate this dispute. Plaintiff's claim is an employment dispute concerning Defendant's failure to pay all wages due. The TotalPay Terms and Conditions Agreement relates only to card services; it is a consumer contract and nothing more. The Agreement does not include a single provision even mentioning Plaintiff's

employment except for ¶ 10, titled "LIMITATION OF LIABILITY," which explicitly *excludes* employment disputes from the scope of the Agreement.

Finally, regardless of the scope of the Arbitration Clause, it is invalid and unenforceable because it is procedurally and substantively unconscionable. Plaintiff was given no choice whatsoever in accepting the Arbitration Clause contained in the Terms and Conditions Agreement. Defendant, a sophisticated entity which at all relevant times controlled access to Plaintiff's already-earned wages, simply foisted the Agreement on Plaintiff *before* Plaintiff could collect money due to him. Considering that Plaintiff's wages were essentially held captive unless he "accepted" the adhesion contract by collecting money he already earned, the degree of procedural unconscionability could not be more extreme. The Agreement is substantively unconscionable because it imposes a significantly shorter limitations window than provided for by the WPCL, essentially time-barring Plaintiff's entire claim, and denies Plaintiff the important statutory right of litigating his claims on a class-wide basis.

For these reasons, as explained below, Defendant's motions should be denied.

## II.    ARGUMENT

### A.  Plaintiff Has Stated A Claim Under the WPCL

Plaintiff has stated a claim under the WPCL because Defendant's deductions were illegal pursuant to 43 P.S. § 260.3 and 34 Pa. Code § 9.1 and Defendant is a covered "employer" under 43 P.S. § 260.2a.

#### 1.    The Deductions Are Illegal Because Defendant Never Acquired Written Authorization From Plaintiff And Never Acquired Approval From The Department Of Labor And Industry

The deductions Defendant took from Plaintiff's pay were illegal. Under the WPCL, "[e]very employer shall pay all wages, other than fringe benefits and supplements, due to his

employees on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a). Employers are however permitted to deduct certain amounts from the pay of their employees. *See* 34 Pa. Code § 9.1(1)-(12). Deductions not listed in Section 9.1(1)-(12) are only permitted when "*authorized in writing by employees as in the discretion of the Department* is proper and in conformity with the intent and purpose of the Wage Payment and Collection Law (43 P.S. §§ 260.1-260.12)." *Id.* at § 9.1(13) (emphasis added). The written authorization requirement is not an insignificant technicality and without it a deduction is illegal. *Ressler v. Jones Motor Co.*, 487 A.2d 424, 427 (Pa. Super. 1985) ("Unless [the defendant] can produce an authorization signed by [the employee] to permit this deduction we must consider said deduction illegal under the Wage Payment and Collection Law."). The Department evaluation requirement is also important and even with written authorization a lack of evaluation by the Department invalidates a deduction. *Id.* ("We therefore hold that a deduction from wages . . . is unlawful absent a showing of Department of Labor and Industry approval *and* written authorizations by employees.") (emphasis added).

Defendant's deduction scheme is not an authorized deduction pursuant to the specific deductions set out in 34 Pa. Code § 9.1(1)-(12). Defendant also failed to comply with the mandates of Section 9.1(13). Defendant admits that Plaintiff never authorized the deductions in writing. Def.'s Br. in Supp., 3–4 ("[B]y accepting, retaining, or using the Service [Plaintiff] manifested consent to the Terms" and "by *using* the TotalPay Card . . . [Plaintiff] expressly authorized the deduction[s]."). Defendant also failed to notify the Department of Labor and

Industry about its deduction scheme. For these reasons alone, Defendant's deductions are illegal, whether or not Plaintiff had an option not to use the TotalPay Card to collect his wages.[1]

### 2. Plaintiff Is Owed Compensation From Defendant Because Defendant Is An "Employer" Under The WPCL

Defendant is an "employer" for WPCL purposes because Defendant was an agent of ERG, Plaintiff's immediate employer, and played an active role in the decision-making process on matters concerning pay and/or compensation. "The plain language of the WPCL states that 'all' officers and agents of a corporation are liable for a violation under its terms." *White v. Ciber, Inc.*, No. 1:07-CV-1483, 2007 WL 3491272, at *3 (M.D. Pa. Nov. 14, 2007). However, "[t]o hold an agent or officer [] liable for unpaid wages, evidence of an active role in decision making is required." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006); *See also Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid–Atl. Promotions, Inc.*, 856 A.2d 102, 106 (Pa.Super.2004) ("To sustain its case against [the defendant] as an 'employer' under the WPCL, [the plaintiff] had to show [the defendant] was actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation.").

Here, it is undisputed that ERG "retained Defendant [] to process its payroll and tender wages earned by [Plaintiff] and other ERG employees . . . " Def. Br. in Supp., pg. 8; Complaint, ¶ 8. In this capacity, Defendant automatically loaded employee wages onto the TotalPay Card for each pay period. Complaint, ¶ 10. After this balance was loaded, Defendant unilaterally

---

[1] Defendant argues that Plaintiff could have accessed his wages without using the TotalPay Card by using a "Money Network Check." Def.'s Br. in Supp., 9–10. Plaintiff does not concede that he ever received the Money Network Checks or that the Money Network Checks would have satisfied the requirements of 43 P.S. § 260.3. In any event, the potential option of using the Money Network Checks is immaterial because Plaintiff has alleged that deductions were in fact made, and made without his written authorization or approval by the Department of Labor and Industry.

deducted a number of fees and charges from employee wages, including "an enrollment fee, account maintenance fees, automatic teller machine ("ATM") withdrawal fees, balance inquiry fees, point of sale ("POS") purchase fees, and an account closure fee."  Complaint, ¶ 11-12.  Thus, it is clear that Defendant acted in an agency capacity by processing ERG's payroll and exercised decision-making authority in this capacity by deducting employee wages through the unilateral assessment of charges and fees.

Defendant does not argue that it is not a decision-making agent with respect to employee pay and/or compensation.  Instead, Defendant argues that Plaintiff has failed to state a WPCL claim because 1) "there [are no] facts suggesting that [Defendant] is an individual corporate officer of ERG who diverted elsewhere funds that were earmarked for wages" and 2) "there are no facts suggesting that ERG is an insolvent employer."  Def. Br. In Supp., pg. 12.  However, there is no case law that supports these propositions and Defendant's interpretation makes no sense.

The cases cited by Defendant do not limit the definition of "agent" to individual corporate officers.  All of cases cited by Defendant involve a plaintiff seeking liability from individual corporate officers.[2]  In none of these cases did a plaintiff seek to hold liable a

---

[2] *Ward v. Whalen*, 18 Pa. D. & C.3d 710, 711 (Pa. Com. Pl. 1981) ("[P]laintiffs instituted this present action against defendant, as Q-Dot's president and sole stockholder, to recover the pension contributions allegedly due under the agreement between the local union and Q-Dot."); *Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir. 1997) ("The [plaintiffs] complaint asserted that Mark and Andrew Aloe, as officers of Shenango, were personally liable for the benefits payments not made by Shenango."); *Carpenters Health & Welfare Fund*, 727 F.2d at 283; *Pagan v. New Wilson's Meats, Inc*., No. 08-0751, 2009 U.S. Dist. LEXIS 80525, at *8-9 (E.D. Pa. Sept. 4, 2009) ("In addition to the foregoing, Defendant Dean Kanefsky seeks dismissal of the claims against him pursuant to Rule 12(b)(6) or, alternatively, pursuant to Rule 56, on the basis that he cannot be deemed Plaintiff's 'employer' under the [WPCL]."); *Teamsters Pension Fund v. Burten*, 634 F. Supp. 128, 131 (E.D. Pa. 1986) ("Plaintiffs have [] submitted copies of documents from Branch's pending bankruptcy case which identify defendant Marvin F. Burten as President of Branch and defendant Richard A. Burten as its Senior Vice President for Operations. The

corporation acting as a decision-making agent of an employer.  In fact, there is no case law that specifically circumscribes the meaning of "agent" to an individual corporate officer.

Indeed, no court has limited the meaning of "agent" in the way Defendant suggests because such circumscription would fly in the face of the WPCL.  As recognized by Defendant, "[t]he WPCL . . . establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006); Def.'s Br. in Supp., 8.  If Defendant's unsupported contention is true, any employer could skirt this mandate by outsourcing payroll services to a third-party agent corporation, which then could "divert[] corporate funds that are meant to go towards paying wages and benefits." *See Belcufine*, 112 F.3d at 639; Def.'s Br. in Supp., 11.

In addition, the cases cited by Defendant do not stand for the proposition that an immediate employer must be insolvent before liability can attach to an agent of the employer.  Instead, they instruct that "[t]he legislature had some purpose for including an agent or officer of a corporation employing persons in the Commonwealth within the definition of 'employer,' and the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments." *See Ward*, 18 Pa. D. & C. 3d at 712; *Mohney v. McClure*, 568 A.2d 682, 685 (Pa. Super. 1990) (same); *Laborers Combined Funds of Western Pennsylvania v. Mattei*, 518 A.2d 1296, 1300 (Pa. Super. 1986) (same).  The reasoning found in

---

documents also indicate that Glenn Burten, the third [and final] defendant, is or was a salaried employee whose weekly salary exceeded that of eight of eleven officers of Branch."); *Kaskey v. Osmose Holdings, Inc.,* No. 13-4825, 2014 U.S. Dist. LEXIS 36536, at *1 (E.D. Pa. Mar. 20, 2014) ("Osmose Holdings, Bill Banholtz, and Kevin Leap (collectively 'Osmose' or 'Third Party Plaintiffs') filed an Amended Third Party Complaint against Donald Shovlin, also a former Osmose Holdings employee, which asserted that Shovlin is the proper defendant in Kaskey's lawsuit, and that Shovlin must indemnify Osmose if Osmose is found liable.").

these cases is applicable here because Plaintiff's immediate employer has not paid his wages. Instead, ERG outsourced wage payment responsibilities to an agent corporation (Defendant), and that corporation failed to make full wage payments on behalf of the employer.  If corporations acting in this capacity cannot be held liable as an agent of an employer, employers could routinely outsource wage payments to agent corporations and use these corporations to deny employees their full wages.  The WPCL would be toothless if employers could evade their legal obligation to pay wages in such a manner.  As a result, the case law cited by Defendant does not support Defendant's request for dismissal. Defendant is an "employer" for purposes of the WPCL because it is an agent of ERG, has been given decision-making authority with respect to the payment of wages, and has exercised that authority on behalf of ERG to deny Plaintiff and members of the class full payment of their wages.

### B.  Plaintiff Is Not Required to Arbitrate His Claim

Before compelling arbitration, the Federal Arbitration Act ("FAA") requires courts to make the following determinations: 1) a valid arbitration agreement exists and 2) the dispute is covered by the scope of the arbitration agreement.  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998)).  In this case the Arbitration Clause is invalid and the dispute is outside its scope.

#### 1.  This Dispute Is Not Within The Scope Of The Arbitration Clause

Even if the Arbitration Clause in Terms and Conditions Agreement is valid, which Plaintiff disputes below, this matter is outside the scope of the arbitration clause.  "[A]rbitration is [] a creature of contract and a court cannot call for arbitration of matters outside [] the scope of the arbitration clause." *Rite Aid of Pennsylvania, Inc. v. United Food & Commercial Workers*

*Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010) (quoting *United Steelworkers of Am. v. Rohm and Haas Co.*, 522 F.3d 324, 332. (3d Cir. 2008)).  "A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original).

Under Pennsylvania principles of contract interpretation, to determine the parties' intentions, a court must read the contract as a whole, considering every part in order to resolve the meaning of a particular part as well as that of the whole.  *Colorcon, Inc. v. Lewis*, 792 F.Supp.2d 786, 797 (E.D. Pa. 2011). Courts should consider the contract as a whole and prefer an interpretation which gives effect to each of its provisions.  *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. 2007).  Here, the parties to the Agreement clearly did not intend that Plaintiff's wage payment dispute would be subject to arbitration.

The Arbitration Clause only covers disputes "related to the [TotalPay Card Money Network Service and all associated products (the "Service")] or the [Terms And Conditions Of Your TotalPay Card Money Network Services, together with all other documents we provide to you pertaining to the TotalPay Card and all associated products (the "Agreement")]."  Terms and Conditions § 8(a).  More specifically, the Terms and Conditions Agreement provides:

> [T]he term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the [Money Network Account], [TotalPay card] or the Agreement, including the validity, enforceability or scope of this Arbitration Provision or the Agreement.

Terms and Conditions § 8(b).

> Any Claim brought by you or by us shall be resolved, upon the election of either you or us, by mandatory binding arbitration pursuant to this Arbitration Provision and the procedures of the National Arbitration Forum or the American Arbitration Association, as selected by the party electing to use arbitration.

Terms and Conditions § 8(c).

The Arbitration Clause then, only covers disputes arising out of or relating to the TotalPay Service and the Agreement regarding that Service.  The Agreement is a service contract which only covers the terms and conditions of use of the TotalPay Card.   It is not an employment agreement and has no connection whatsoever to the parties' relationship as employer-employee for purposes of the WPCL.  Plaintiff's legal claim arises out of that employer-employee relationship and concerns failure to fully pay wages earned.  The Agreement does not mention any terms of employment or discuss wages in any way.  In fact, the Agreement unequivocally disavows any connection to the employer of the card user and the authors of the agreement disclaim responsibility for employment-related disputes.  In the paragraph titled "LIMITATION OF LIABILITY," which appears a few lines below the end of the Arbitration Clause, the Agreement states:  "WE ARE NOT AFFILIATED WITH OR RESPONSIBLE FOR THE ACTIONS OR OMISSIONS OF YOUR EMPLOYER.  ANY DISPUTES THAT ARISE BETWEEN YOU AND YOUR EMPLOYER ARE NOT OUR RESPONSIBILITY."  Terms and Conditions § 10(b).

As further evidence that the parties to the Agreement did not intend to arbitrate employment-related disputes, the word "employer" is completely absent from the definition of the parties within the Arbitration Clause, even though "employer" is separately defined in the preamble of the Agreement.  *Compare* Terms and Conditions § 8(b) *with id.* at second unnumbered paragraph (Doc. 8-1, 5).  If employment-related disputes such as this were meant to be covered by the Arbitration Clause, surely the word "employer" would have been included among the seventeen additional descriptors within the "we" definition.

Plaintiff and the members of the Class were/are direct employees of ERG.  They also were/are "employees" of Defendant for WPCL purposes as a result of the relationship between Defendant and ERG.  Defendant contracted with ERG to provide payroll services and distribute corporate funds for payment of employee wages on ERG's behalf.  In this capacity, Defendant became a decision-making agent of ERG and thus acted as an "employer" under the WPCL.  As a covered "employer," Defendant had an obligation to pay Plaintiff and the members of the Class "all wages . . . due . . . on regular paydays."  *See* 43 P.S. § 260.3.  Defendant had the additional obligation of refraining from deducting employee wages for purposes not listed in 34 Pa. Code § 9.1(1-12).  Finally, if Defendant sought a deduction outside § 9.1(1-12), 34 Pa. Code § 9.1(13) obligated Defendant to obtain written authorization by employees for such deduction, as well as approval from the Department of Labor and Industry.

This litigation concerns the discharge of that duty, a duty wholly separate from and not related to the Service and the Agreement.  Defendant failed to comply with the above statutory mandates and chose to unilaterally take deductions from the wages of Plaintiff and the class without written authorization and without approval by the Department of Labor and Industry.  Plaintiff disputes the deduction of fees as they relate to Defendant's status as "employer" under the WPCL and Defendant's duty to furnish Plaintiff his wages in full. That dispute does not arise out of the TotalPay Agreement, which is clearly not an employment agreement, explicitly distinguishes employment disputes, and fails to include the cardholder's "employer" as a party to the Arbitration Clause.  Plaintiff's claim is therefore not within the scope of the Arbitration Clause.

### 2. The Arbitration Clause Is Invalid And Unenforceable Because It Is Both Procedurally And Substantively Unconscionable

11

Defendant's motion should also be denied because, irrespective of the scope of the Arbitration Clause, this Court should decline to enforce it. Pursuant to the FAA, arbitration agreements may be held unenforceable "upon such grounds as exists at law or equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements…." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). In determining the validity of an arbitration clause, courts should apply state law, so long as the state law governs contracts generally and not arbitration agreements specifically. *Id*. at 687. Pennsylvania's general contract law is accordingly applicable here.

Under Pennsylvania law, a contract will be deemed unconscionable if: "one of the parties lacked a meaningful choice about whether to accept the provision in question and the challenged provision or contract unreasonably favors the other party to the contract." *Hopkins v. New Day Financial*, 643 F. Supp.2d 704, 716 (E.D. Pa. 2009). As a result, to prove unconscionability a party must show that the contract was both substantively and procedurally unconscionable. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007). However, procedural and substantive unconscionability need not be present in similar degrees. *Quilloin v. Tenet HealthSystems Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). To the contrary, "the Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required' and presumably vice-versa." *Id.* (*quoting Salley*, 925 A.2d at 125 & n. 12.).

    a.   **The Arbitration Agreement is Procedurally Unconscionable**

"Procedural unconscionability examines the process leading to the formation of [a] contract and the form and language of the agreement." *Porreca v. Rose Grp.*, No. CIV.A. 13-1674, 2013 WL 6498392, at *7 (E.D. Pa. Dec. 11, 2013).  When a party lacks meaningful input in the formation process and/or meaningful choice in the acceptance of the form and language of an agreement, a contract is procedurally unconscionable. *Quilloin*, 673 F.3d at 235 (quoting *Salley*, 925 A.2d at 119.  The following factors are instructive in determining whether procedural unconscionability is present: 1) "the take-it-or-leave-it nature of the standardized form of the document;" 2) "the parties' relative bargaining positions;" and 3) "the degree of economic compulsion motivating the adhering party." *Sanford v. Bracewell & Guiliani*, 6 F. Supp. 3d 568, 579 (E.D. Pa. 2014) (citing *Quilloin*, 673 F.3d at 235–36).

The application of these factors to the case at bar clearly demonstrates procedural unconscionability:

> 1. *The arbitration agreement was presented on a "take-it-or-leave-it" basis*

The Arbitration Clause and the Terms and Conditions Agreement are standard form agreements that make extensive use of boilerplate language and legalese. The terms were first disclosed to him when he was given his TotalPay Card.  Plaintiff was not given any actual choice to accept, reject, or modify the Agreement through bargaining.  Defendant required Plaintiff to use the TotalPay Service in order to collect his pay and did not offer an alternative service not governed by the Agreement and the Arbitration Clause contained therein.[4]  Thus, Plaintiff had no choice at all but to accept the terms of the Agreement because the Service was the only option

---

[4] Whether Plaintiff used the TotalPay Card, or the Money Network Checks Defendant claims were available to him, he still would have been required to collect his pay through the TotalPay Service.

offered to him in order to receive his pay; in order to actually reject the Agreement, Plaintiff's only course of action would have been to quit his job and forfeit wages already earned.

> 2. *There was a significant disparity in the bargaining positions between Plaintiff and Defendant.*

Defendant is a large corporation that services employers throughout the world. In contrast, Plaintiff was an employee of a staffing agency. Defendant at all relevant times controlled access to Plaintiff's wages and dictated how Plaintiff could receive them. It is thus apparent that Defendant "clearly possessed more bargaining power" than Plaintiff. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 202 (3d Cir. 2010).

> 3. *Plaintiff faced a high degree of economic compulsion in accepting the Terms and Conditions Agreement and the Arbitration Clause contained therein*

Plaintiff faced a high degree of economic compulsion when presented with the TotalPay Service. Defendant held Plaintiff's earned wages and provided to Plaintiff only one method of accessing those wages: accepting the Agreement. Plaintiff was not buying a discretionary consumer good or negotiating employment with one among several potential suitors. He already had a job and had to accept the Agreement to retrieve money owed to him because he had earned it. The only way Plaintiff could reject the Agreement was by quitting his job and forfeiting his accrued wages.

Plaintiff never had a choice whether to accept the Agreement and the Arbitration Clause therein. His agreement was completely compelled by Defendant's authority to distribute Plaintiff's already-earned wages. The process was the antithesis of mutual assent and represents an extreme degree of procedural unconscionability.

### b. The Arbitration Agreement is Substantively Unconscionable

A contract is substantively unconscionable where it "unreasonably favors the party asserting it." *Salley*, 925, A.2d at 119.  In this Circuit, a contract may be deemed substantively unconscionable where it alters or limits the rights and remedies available to a party in the arbitral forum.  *Quilloin*, 673 F.3d at 230.

Here, the Agreement unreasonably favors Defendant because it requires Plaintiff to bring all claims in arbitration or court within a one-year limitations period.  *See* Terms and Conditions § 9.  This is a significantly shorter window than the three-year limitations period of the WPCL. 43 P.S. § 260.9a(g).  If Plaintiff is held to the Agreement in this case, he will be severely prejudiced, and Defendant unreasonably favored, because Plaintiff's entire claim is beyond that one-year limitations period.  Plaintiff's employment with ERG ended in approximately July 2013.  (Compl. ¶ 7).  This case was filed August 22, 2014, meaning that if the Agreement were enforced, Plaintiff would have no recoverable damages, despite the fact that Plaintiff never had an actual choice whether to accept the Agreement, Plaintiff never signed it, and the Agreement itself is completely unrelated to Plaintiff's employment.

The arbitration agreement also forces Plaintiff to waive his right to litigate his claims on a class-wide basis.  *See* Terms and Conditions § 8(d) ("YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS . . .") and § 8(f) ("Any Claim resolved by arbitration shall be arbitrated on an individual basis . . .").  Thus, if the court compels arbitration, Plaintiff will be unable to assert his claims as part of a class.   This is especially concerning in light of the National Labor Relations Board's consistent position that forced waivers of the right to maintain class actions constitute an unfair labor practice under the National Labor Relations Act.

The NLRA guarantees employees "the right … to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. In two NLRB decisions, *In re D.R. Horton, Inc.*, 357 N.L.R.B. No. 184 (2012) and *Murphy Oil USA, Inc. and Shelia M. Hobson*, 361 N.L.R.B. No. 72 (Oct. 28, 2014), the Board took the position that the use of mandatory arbitration agreements which bar employees from bringing class or collective claims against their employers constitutes an unfair labor practice because it violates § 157. *See D.R. Horton*, 357 N.L.R.B. No. 184 at 16 (holding that "employers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in all forums, arbitral and judicial."); *Murphy Oil*, 361 N.L.R.B. No. 72 at 3 ("Having reaffirmed the *D. R. Horton* rationale, we apply it here to find that the Respondent has violated Section 8(a)(1) of the Act by requiring its employees to agree to resolve all employment-related claims through individual arbitration."). As part of its decisions, the NLRB held that this interpretation of the NLRA is not foreclosed by the FAA or its underlying policy favoring arbitration. *See D.R. Horton*, 357 N.L.R.B. No. 184 at 11–16; *Murphy Oil*, 361 N.L.R.B. No. 72 at 6–7.

The fact that the arbitration clause in this case denies Plaintiff this important statutory right makes the clause substantively unconscionable according to longstanding and well-established jurisprudence. Indeed, the Supreme Court of the United States has long held that agreements to arbitrate are enforceable under the FAA only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 637 (1985). The Court in *Mitsubishi Motors* stressed that arbitration agreements must provide a way for parties to "effectively vindicate" their statutory rights in a manner where nothing of substance is lost so that "the statute will continue to serve both its remedial and deterrent function." *Id.* at 637. Here, it is

particularly clear that forced arbitration will deny Plaintiff the ability to effectively vindicate his statutory rights as it will prevent him from asserting his class action rights under Rule 23.

Moreover, Pennsylvania courts have long recognized that class action waivers are substantively unconscionable where, like here: "class litigation is the only effective remedy such as when the high costs of arbitration compared with the minimal potential value of individual damages denies[s] every plaintiff a meaningful remedy." *Quilloin*, 673 F.3d at 232 (*quoting Thibodeau v. Comcast Corp.,* 912 A.2d 874, 883-84 (Pa. Super. Ct. 2006)).

In sum, this Court should hold that the Arbitration Clause is unenforceable because Plaintiff never had a choice whether to consent to it, and because its enforcement would unreasonably favor Defendant by time-barring the entirety of Plaintiff's claim for wages due and eliminating Plaintiff's class action rights.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings should be denied.

Dated: December 19, 2014

        Respectfully submitted,

        By:

        /s/Gary F. Lynch
        CARLSON LYNCH SWEET & KILPELA, LLP
        PNC Park
        115 Federal Street, Suite 210
        Pittsburgh, PA 15212
        Telephone: (412) 322-9243
        Facsimile: (412) 231-0246
        gflynch@carlsonlynch.com

**Certificate of Service**

I hereby certify that on December 19, 2014, I filed a true and correct copy of foregoing document using the Court's CM/ECF system, which will generate notice to all counsel of record.

/s/ Gary F. Lynch

Gary F. Lynch