**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSHUA SILFEE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AUTOMATED DATA PROCESSING, INC., and ERG STAFFING SERVICE, LLP,<br><br>    Defendants. | CIVIL ACTION NO. 3:15-CV-00023<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before me are four motions: Defendant Automated Data Processing, Inc.'s ("ADP") Motion to Compel Arbitration and Stay Litigation (Doc. 36) and Motion to Dismiss for Failure to State a Claim (Doc. 38), as well as Defendant ERG Staffing Services, LLP's ("ERG") Motion to Compel Arbitration and Stay Litigation (Doc. 40) and Motion to Dismiss for Failure to State a Claim (Doc. 42). After careful consideration, I will deny Defendants' motions to compel arbitration, deny ERG's motion to dismiss, and grant ADP's motion to dismiss.

**I. Background**

Plaintiff Joshua Silfee ("Silfee") wishes to represent a class of every employee of every employer in Pennsylvania that used a payroll debit card system administered by Defendant ADP. (Am. Compl., ¶ 22). According to Silfee, ADP charged fees on those paycards, which were issued to him as payment of his wages, in violation of Pennsylvania's Wage Payment and Collection Law (WPCL). Specifically, Silfee contends that ADP's paycard system imposed enrollment, maintenance, ATM, balance inquiry, purchase and account closure fees. (*Id.* ¶ 13). Such fees are alleged to be in violation of the WPCL because Pennsylvania allows only for "deductions provided by the law, or as authorized by

regulation of the Department of Labor and Industry." 43 P.S. § 260.3.

Defendant ADP is "a provider of business processing and cloud-based solutions, including payroll, talent management, human resource management, benefits administration, and time and attendance, to employers and automotive dealerships around the world." (*Id*. at ¶ 4.) As part of its payroll products and services offered to clients, ADP provides employers the option of paying their employees through a paycard system, known as TotalPay. (*Id*. at ¶ 8.) This paycard system is issued and administered by ADP, and each employee is provided with a VISA brand paycard that is loaded each pay period with the employee's net earnings. (*Id*.)

One of the employers that ADP contracted with for the provision of various payroll services, including the use of the TotalPay paycard system, was ERG Staffing Services, LLP's, Silfee's employer. (*Id*. at ¶ 10.) ERG is a "staffing services that provides light industrial, clerical, technical, professional, and skilled trade personnel to various businesses and companies." (*Id*. at ¶ 6.) Until approximately July 2013, Silfee was employed by ERG in Pennsylvania. (*Id*. at ¶ 9.)

Each pay period, ADP processed payroll for all ERG employees and automatically loaded the employees' wages onto the TotalPay paycard. (*Id*. at ¶ 12.) Employees who were paid wages through the paycard were charged a host of fees. (*Id*. at ¶ 13.) Those fees were deducted by ADP from the balance of funds loaded onto employees' paycards. (*Id*. at ¶ 14.) According to Silfee, those deductions violate Pennsylvania's Wage Payment and Collection Law. (*Id*. at ¶ 15.)

On August 22, 2014, Silfee, on behalf of himself and all others similarly situated, commenced this action against ADP in the United States District Court for the Eastern District of Pennsylvania on August 22, 2014. The action was subsequently transferred to this Court by agreement of the parties. (Doc. 14.) In his Complaint, Silfee alleged that ADP

violated WPCL's, 43 P.S.§ 260.1 *et seq*., as a result of the fees associated with the use of the TotalPay paycard system. (Compl.). Such fees are alleged to be in violation of the WPCL, which only allows for "deductions provided by the law, or as authorized by regulation of the Department of Labor and Industry." (*Id.*)[1]

On November 21, 2014, ADP filed a motion to dismiss or to compel arbitration. (Doc. 8.). At that time, I ordered that Silfee's original complaint be dismissed for failure to state a claim against ADP. (Doc. 23, 1). I held that Silfee failed to allege any facts to support his contention that ADP, an entity which provided payroll services for his employer, had an active role in decision-making on issues relating to wage and compensation decisions at ERG. (*Id.* at 7). Silfee alleged that ADP was involved in the policy and decision-making on matters of pay and compensation for ERG, but failed to support this "naked assertion" with any "factual enhancement" as required under *Iqbal* and *Twombly*. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Silfee was granted leave to file an amended complaint, which he filed on April 2, 2015, adding ERG, his former employer, as a defendant. (Doc. 25.)

In his Amended Complaint, Silfee alleges that ERG delegated control and decision-making authority over employees' wages to ADP, thus making ADP its agent. (*Id*. at ¶ 17). Specifically, Silfee claims that ADP exercised its decision-making authority by selecting paycards as a method of payroll distribution, affiliating with third parties to create and administer the paycard system, and determining the terms of use of the paycards, including the imposition of deductions from the funds loaded onto paycards. (*Id*. at ¶ 18; 50.) Silfee alleges that, acting as an agent of the employer, ADP was directly responsible for the

---

[1] I note here that federal law also sets forth obligations for financial institutions related to electronic funds transfers, including payroll card accounts. *See* 12 C.F.R. §205.18(a),(b) (2007); *see also* Requirements for Financial Institutions Offering Payroll Card Accounts, 71 Fed. Reg. 51444 (Aug. 30, 2006).

decision to implement the policy regarding the wage deductions and fees associated with the TotalPay paycard system. (*Id*. at ¶ 19.)

On May 29, 2015, ADP filed a motion to compel arbitration (Docs. 36, 37) and a motion to dismiss for failure to state a claim. (Docs. 38, 39). On May 29, 2015, ERG also filed a motion to compel arbitration (Docs. 40, 41) and a motion to dismiss for failure to state a claim. (Docs. 42, 43). On June 26, 2015, Silfee filed his briefs in opposition to Defendants' motions. (Docs. 46-49). On July 13, 2015, both ADP and ERG filed reply briefs in further support of their motions. (Docs. 50; 52). Silfee also submitted a Notice of Supplemental Authority on June 3, 2016. (Doc.57). The motions are thus fully briefed and ripe for disposition.

## II. Motions to Compel Arbitration

No party addresses the standard I am to adopt to review Defendants' motions to compel arbitration. In the Third Circuit, the standard for motions to compel arbitration depends on the circumstances. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774-76 (3d Cir.2013). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id*. at 776 (citing *Somerset Consulting, LLC v. United Capital Lenders, LLC,* 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). However, if the complaint and its supporting documents are unclear regarding the agreement to arbitrate and the validity of the arbitration agreement is at issue, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Somerset*, 832 F.Supp.2d at 482. Upon "limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Guidotti*, 716 F.3d at 776.

In light of *Guidotti*, a disposition of a motion to compel arbitration under the summary judgment standard would be premature in this case. However, a disposition of the motion to compel arbitration under the 12(b)(6) standard would also run afoul of *Guidotti* because such a standard is to be applied only in cases where a party does not question the arbitrability or applicability of the arbitration agreement. That is not the case here. (*See* Doc. 47). Moreover, without a clearly-articulated standard of review, Silfee cannot present facts essential to justify its opposition to the motion to compel arbitration because he does not refer to any standard of review; neither do Defendants.

I will therefore abide by the language of *Guidotti* which authorizes me to delay ruling on Defendants' motions to compel arbitration until a summary judgment stage when discovery is underway. This is also in accord with Rule 56. As the Advisory Committee note to the 2010 amendments to Rule 56 makes clear, "in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Once "other pretrial proceedings have been had" in this case, namely, at the very least "discovery on the question of arbitrability," *Guidotti*, 716 F.3d 776, I will entertain a renewed motion to compel arbitration under the appropriate standard of review, if ERG chooses to pursue this defense. As such, I will deny Defendants' motions to compel arbitration.

### III. Motions to Dismiss

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of the claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of

establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits

attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

### B. ADP's Motion to Dismiss

ADP seeks dismissal of Silfee's claim alleging that ADP's fee assessment associated with the use of the paycard system violated the WPCL. ADP claims that it complied with the WPCL by enabling Silfee to collect his wages once each pay period without incurring any fees and, to the extent that Silfee chose to incur card-related fees, the fees in question were withholdings that Silfee authorized. (Doc. 39, 2). Further, ADP claims that Silfee has failed to plead facts sufficient to demonstrate that ADP was an agent of ERG for the purposes of the WPCL. (*Id.*) Specifically, ADP contends that Siflee failed to allege any facts to support his contention that ADP had an active role in decision-making on issues relating to wage and compensation decisions at ERG. (Doc. 39, 3-7).

As I noted in the Memorandum dismissing Silfee's original complaint, because the WPCL lacks the definition of an "agent", the resolution of the question whether ADP qualifies as an "agent" of ERG implicates "[t]he interpretation of [a] Pennsylvania statute[] [which] is governed by the state's Statutory Construction Act of 1972, 1 Pa. Cons. Stat. Ann. §§ 1501-1991 (1995 Supp.)." *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 371 (3d Cir. 1996). The Pennsylvania Statutory Construction Act provides that technical words are to be construed according to their "peculiar and appropriate meaning." 1 Pa. Cons. Stat. Ann. § 1903(a); *accord Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC*, 106 A.3d 103, 109-10 n.6 (Pa. Super. Ct. 2014) (noting that "agent," an undefined term in the

Contractor and Subcontractor Payment Act, was to be construed according to its peculiar and appropriate meaning).

An "agent" is defined as "one who is authorized to act for or in place of another." *Vine v. Commonwealth*, 9 A.3d 1150, 1158 (Pa. 2010) (quoting Black's Law Dictionary 26-27 (3d. pocket ed. 2006)). "A principal and agent can be in the relationship of a master and servant, or simply in the status of two independent contractors." *Juarbe v. City of Phila.*, 431 A.2d 1073, 1075-76 (Pa. Super. Ct. 1981) (citations omitted). While a party "may stand as both independent contractor and agent to another," *Tax Review Bd. v. Slater Sys., Inc.*, 398 Pa. 477, 482, 158 A.2d 561, 563 (Pa. 1960) (citing *Commonwealth v. Minds Coal Mining Corp.*, 360 Pa. 7, 60 A.2d 14 (Pa. 1948)), "[u]nder Pennsylvania law, it has been expressly stated that not all independent contractors are agents." *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1528 (E.D. Pa. 1991) (citing *Minds Coal*, 360 Pa. 7, 17, 60 A.2d 14, *cited with approval by Moon Area School District v. Garzony*, 522 Pa. 178, 189, n. 8, 560 A.2d 1361, 1367 n.8 (Pa. 1989)).

ADP's motion to dismiss Silfee's WPCL claim will be granted. Stripping the Amended Complaint of its legal conclusion that ADP was an "agent" of ERG, the extent of Silfee's factual allegations regarding the relationship between the two entities is that ERG contracted with ADP for the provision of payroll services and that it was ADP that decided to make the allegedly unlawful deductions. (*Am. Compl.* at ¶ 53.) Silfee's Amended Complaint, however, is fraught with inconsistences. On the one hand, Silfee contends that ADP "select[ed] paycards as a method of compensation." (*Id.* ¶ 18). On the other, he claims that ERG in fact "*authorized* ADP to implement to utilize" the paycard system, (*Id.* ¶ 20 (emphasis added)), that "ADP provide[d] employers the *option* of paying their employee through a paycard system," (*Id.* ¶ 8 (emphasis added)), and that paycards are only one option for paying wages to employees among a "suite of payroll products and services [that ADP] offered to its clients." (*Id.*) In support of his argument, Silfee also claims that "ADP *paid* wages to ERG employees," (*Id.* ¶ 11 (emphasis added)), when in fact, as Silfee admits, APD merely "processed the payroll for all employees," and "automatically loaded the"

wages, using funds provided by ERG. (*Id.* ¶ 12; Doc. 39 at 15). Therefore, a careful reading of Silfee's Amended Complaint reveals that ADP played a significantly more passive role than Silfee aims to portray. It is much more plausible that ADP simply provided ERG with the *option* of using the paycard system as part of ADP's "suite of payroll products." (*See* Doc. 39, 16-17; Doc. 52, 16.).

As I made clear when I dismissed Silfee's original complaint, Silfee was obligated to come forward with factual allegations showing that ADP was more than a payroll vendor, and that it was "authorized to act for or in place of [ERG]" with respect to "corporate decision-making or corporate advisement on matters of pay or compensation." (Doc. 23, at 7, 9). Silfee again has failed to satisfy the requirements of *Twombly*, and, although discovery is often "necessary when an agency relationship is alleged," *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003), Silfee again has not alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence" that ADP was ERG's agent. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Silfee's narrative is inconsistent with facts essential to support the claim that ADP decided "for or in place of" ERG that paycards would be utilized as ERG's method of wage distribution. *Developers Sur. & Indem. Co.*, 2013 WL 6504751, at *10; Gainey, 177 F.Supp. at 431.

Although the Pennsylvania Legislature has proclaimed that the WPCL should be liberally construed "to effect [its] objects and to promote justice," 1 Pa. C.S.A. § 1928( c), and "[has] broadly defined 'employer,' . . . courts have narrowly construed this provision as imposing liability only against agents or officers who had an active role in decision-making . . . and only in the event the corporation has first defaulted upon its wage payment obligation." *Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC*, 2014 PA Super 260, 106 A.3d 103, 108 (2014) (citing *Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid–Atlantic Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. 2004)). Therefore, even if ADP were an agent, any liability is contingent upon ERG's inability to pay due to ERG's corporate managers diversion of funds that were intended to be used for

wages. *Belcufine*, 112 F.3d at 639 (stating that the purpose of the Pennsylvania Legislature was to hold an agent or officer liable under the WPCL "in the event that a corporation failed to make wage payments"); *see also Panetta v. SAP Am., Inc.*, No. 05-4511, 2006 WL 924996, at *4 (E.D. Pa. Apr. 6, 2006) ("[A]n officer's liability under the WPCL is contingent on liability of the company to the employee."). Although Silfee was compelled to come forward with facts suggesting that ADP, acting as an agent of ERG, diverted ERG corporate funds that were meant to pay wages, he asserts no such facts in his Amended Complaint.

Finally, ADP argues that the deductions Silfee complains about were in fact made by a third-party financial institution, MetaBank, for Silfee's use of the debit-card services, and as such WPCL does not apply at all. (Doc. 39, 15.). Silfee counters that it is irrelevant that MetaBank took the deductions, because "[a]s 'employers' under the WPCL, both [ADP and ERG] had the duty to ensure that Plaintiff received his full wages." (Doc. 48, 10). Such an interpretation of the WPCL's provisions is too significant a leap. Clearly, there is question about the permissibility of the use of paycards as a means to pay employees, *See, e.g.*, Office of N.Y. State Att'y Gen., *Pinched by Plastic: The Impact of Payroll Cards on Low-Wage Workers* (2014), http://www.ag.ny.gov/pdfs/Pinched%20by%20Plastic.pdf. I cannot, however, agree with Silfee that the WPCL's pertinent provisions extend to ADP. As the Third Circuit held in *Belcufine*, an employee's primary recourse for recovery of unpaid wages is from his actual employer. 112 F.3d at 639-40. Silfee must seek recourse for recovery of any unpaid wages from ERG.

Because Silfee has not adequately pled that ADP was an "agent" of ERG for the purposes of the WPCL, Silfee fails to state a claim upon which relief can be granted as against ADP, and ADP's motion to dismiss will be granted.

**C.    Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure permits a court to grant a party leave to amend its pleadings. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. As such, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be

inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). In this context, "'futility' means that the complaint, as amended, would still fail to state a claim upon which relief could be granted." *Shave v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)). Silfee will not be given the opportunity to file a second amended pleading against ADP.

### D. ERG's Motion to Dismiss

Silfee's employer, ERG, also seeks dismissal of Silfee's claim that it violated the WPCL with respect to the fees associated with the use of the TotalPay paycard system. (Doc. 42).

The WPCL states, in pertinent part:

> (a) Every employer shall pay all wages, other than fringe benefits and supplements, due to his employees on regular paydays designated in advance by the employer. . . . The wages shall be paid in lawful money of the United States or check, except that deductions provided by the law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employee, may be made including deductions of contributions to employee benefits plans, which are subject to the Employee Retirement Income Security Act of 1974, 29U.S.C. § 1001 *et seq*.

43 P.S. § 260.3.2. Section 9.1 of the Pennsylvania Code lists twelve deductions from wages authorized by the Department of Labor and Industry. 34 Pa. Code. § 9.1(1-12). It also permits "[s]uch other deductions authorized in writing by employees as in the discretion of the Department is proper and in conformity with the intent and purpose of the Wage Payment and Collection Law. . . ." *Id*. at § 9.1(13).

The purpose of the WPCL has been to:

> provide a vehicle for employees to enforce payment of their wages and compensation held by their employers . . . [and] to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

*Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 574 (Pa. Super. Ct. 2006) (citing *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. Ct. 2000)).

ERG argues that Silfee fails to state a claim against it because ERG itself did not make deductions from Silfee's wages (Doc. 43, 6–9), and the deductions at issue were authorized by Silfee (*Id.* at 9–13).[2] Both arguments fail.

Under Pennsylvania law, "[e]very employer shall pay all wages" to his employees, unless one of the permitted deductions applies. In this case, ERG did not pay wages directly to employees, but rather authorized a third-party, ADP, to distribute them from a fund held in a bank. (*See* ADP TotalPay Card Agreement, § 1(D) (Doc. 38-5). ADP then charged fees against the employees' wages. ERG now claims that, although the law requires it to "pay all wages," it nevertheless bears no responsibility for the actions of a third-party ERG hired to disburse wages on its behalf. Apparently, neither the fee-laden debit cards nor the allegedly cumbersome and arduous scheme ADP imposed on receiving wages are ERG's responsibility. Following ERG's logic, a Pennsylvania employer can comply with the WPCL by tendering its employees' wages to another entity without regard to whether the wages eventually reach the employees free of unauthorized deductions, or, in fact, reach them at all. On the contrary, the plain meaning of 43 P.S. § 260.3.2 is that it requires that "all wages" reach employees without any impermissible deductions, and holds the employer liable if that is not so. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-462 (2002) (citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254 (1992)) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"); *Hannaberry HVAC v. Workers' Comp. Appeal Bd.*, 834 A.2d 524, 531 (Pa. 2003) ("When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative

---

[2] ERG also argues that the deductions at issue were authorized by the Pennsylvania Department of Labor and Industry but, except for an inference emerging from DLI's opinion letters (*See, e.g.*, Doc. 43 at 12), ERG presents no evidence to directly support that claim. In any case, at this stage, my inquiry is confined to evaluating whether Silfee stated a plausible claim for relief, not whether he stated a winning one. *See Semerenko*, 223 F.3d at 173.

intent."). The words of the WPCL are unambiguous. Nowhere does the law imply that an employer can skirt its responsibility to "pay all wages" merely because it chose a third-party vendor to administer a fee-laden paycard system. *See Laborers Combined Funds v. Mattei*, 359 Pa.Super. 399, 405-06, 518 A.2d 1296, 1299-1300 (1986) (stating that the obligation for liability under the WPCL is placed on the decision makers of the corporation and "the conduct of a third party will not be permitted to affect the [employer's] contractual obligations"). Section 260.3.2 places on the employer the burden to ensure that a pay system complies with the law, and that includes ensuring that a chosen payment scheme does not result in impermissible deductions, fees, or delay.

Silfee also argues that ERG steered workers to receive wages by paycards by creating an arduous process which effectively discouraged the selection of a check as an alterative method of payment. (Doc. 48, 5). Research has been unable to discover any legislative history or caselaw discussing this novel issue of law. I am aided here, however, by a letter dated October 31, 2012 from Peter Von Getzie, Assistant Counsel, Commonwealth of Pennsylvania, Governor's Office of Attorney General to which both parties refer (*See, e.g.*, Doc. 48, at 8; Doc. 43, at 12). Although the letter "does not represent any type of formal opinion, ruling, or policy statement [and] . . . is not binding on the courts," (2012 Letter at 1), I nonetheless find it a helpful guide. As the letter explains:

> Historically, we have viewed payment of wages in forms other than "lawful money" or "check" -such as debit or pay card programs- as permissible only if an employee agrees to this form of payment. We have raised concerns about any program of wage payment pursuant to which employees are compelled to accept payment through a card instead of a traditional paper paycheck. For example, any charges or fees associated with a debit card method of payment may be seen as an invalid deduction from wages, prohibited by the WPCL's regulations 34 Pa. §§ 9.1- 9.4.

(*Id. at* 2). The letter confirms that a paycard program that results in coerced consent may run afoul of the WPCL. Without a doubt, ERG was on notice that, by contracting with ADP to use the TotalPay Services, it was subjecting its employees to fees imposed by ADP. *See* ADP TotalPay Card Agreement, § 2(B) (Doc. 38-5) ("[ERG] acknowledges that separate fees and charges for Card maintenance and usage will be applied to Cardholders' Cards.

Such Cardholder fees and charges are subject to change in accordance with the terms and conditions of use of the Cards."). ERG argues that because "cardholders can use Money Network Checks to collect their wages without incurring a fee." (Doc. 43, at 14), and the WPCL expressly allows wages to be paid in either "lawful money of the United States or check" 43 P.S. § 260.3(a), it's payment scheme is not violative of the WPCL. Indeed, the abovementioned letter from the Attorney General's office explains that some "debit or card programs have alleviated our concerns by offering 'self-issued' paper checks." ERG cites to the Terms and Conditions of the TotalPay Card Money Network Services, which Silfee received, as stating that,

> [a]n initial stock of Money Network Checks is provided when you activate the Money Network Service. You may choose to receive your pay each or any pay period by completing a Money Network Check, rather than through any use of the Card. . . . The first Money Network Check that you use during each payroll payment is free.

(Doc. 36-4, 5.) Silfee, however, argues that the Money Network Checks do "not meet the legal definition of a 'check' because they are not unconditional written orders when they are given to employees, nor do they automatically become unconditional written orders on paydays." (Doc. 48, at 9).

The WPCL provides for a definition of "check." It defines it as "[a] draft drawn on a bank and payable on demand." 43 P.S. 260.2a. A "draft" is an "order for the payment of money . . . ." *See* Merriam-Webster's Dictionary of Law 151 (1996). This is consistent with the definition of "order" under the Uniform Commercial Code ("UCC"). *See* 13 P.S. § 3103(a) (defining "order" as "[a] written instruction to pay money signed by the person giving the instruction").

The WPCL does not define the phrase "payable on demand," but it too has a well-established meaning under the law. *See* 13 P.S. § 3108(a) (1992) ("A promise or order is 'payable on demand' if it: (1) states that it is payable on demand or at sight or otherwise indicates that it is payable at the will of the holder; or (2) does not state any time of payment."). Payable on demand "is an unconditional agreement to pay a sum certain on demand . . . ." *First Nat'l Bank v. Bartlett*, 35 Pa. Super. 593, 1908 Pa. Super. LEXIS 87 (Pa.

14

Super. Ct. 1908). *See also Cook v. Carpenter*, 212 Pa. 165, 61 A. 799, 1905 Pa. LEXIS 576 (Pa. 1905) ("The obligation to pay in such case is absolute and present; the only element not fixed with certainty is the time of payment, and as that is at the option of the creditor, and the debtor must be prepared *eo instante*, the time of payment, and with it the statute, begins to run at once.").

Silfee argues that the Money Network Checks offered by Defendants do not function like checks for because "an employee is required to undertake a multi-step process over the telephone to obtain prior authorization and a valid transaction code before the check can be used." (Doc. 48, at 9). Specifically,

> to activate a Money Network Check, the employee must: 1) check the balance of his Money Network Account so that he knows the amount he needs to enter on his check. He can only check his balance by calling Money Network, or visiting a website, and entering his TotalPay Card number; 2) fill out the amount and payee of the check; 3) call a number listed on the back of the check, get to the Money Network Check menu, enter the check number and "digit" number using his phone's keypad, enter the amount written on the check on his keypad, and write down the "issuer number" and "transaction number" provided by the automated phone system; 4) write the issuer number and transaction number on the check; 5) if he does not want to incur a fee for cashing the check, he must use the internet or call Money Network's customer service line to find a location that will cash the check for free; 6) finally, he must take the check to that location to receive his wages. (*See* Doc. 42-7, at 4). It appears that only two Money Network Checks are provided to the employee with the TotalPay Service materials; the employee is required to call customer service to order more checks. *Id.*

(Doc. 48, at 5). In addition,

> employees face the risk of incurring fees or not receiving their wages if they make any mistakes while writing the check. For instance, if the employee writes the check for an incorrect amount or writes an incorrect transaction number, the check may be rejected because it is not an unconditional order to pay; it must have a valid code. If the employee needs to make a stop payment request on a check, he will also incur a $10 fee. (Terms and Conditions, § 21(e)). If the employee requires the assistance of a human operator while interfacing with the Money Network phone systems, he could incur a variety of $1 "operator" fees. *Id.*

(*Id.* at 6). I find that it is too great a leap of statutory construction to assume that the legislature meant for the word "check" to include the payment mechanism Silfee describes. As such, in addition to stating a plausible claim for relief against ERG under the WPCL for the complained-of deductions, Silfee also states a plausible claim that ERG violated the

WPCL because it failed to pay wages in "lawful money" or "check," irrespective of whether any deductions were made.

### III. Conclusion

For the above-stated reasons, I will deny Defendants' motions to compel arbitration, deny ERG's motion to dismiss, and grant ADP's motion to dismiss. Silfee will also not be given the opportunity to file a second amended complaint.

An appropriate order follows.


September 15, 2016　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　United States District Judge